The opinion of the court was delivered by
Breaux, J.
Mrs. Annie P. Mower, authorized, assisted and joined by her husband, Calvin R. Mower, domiciled in the State of Illinois, represented by Emile O. Drew, of Bienville parish, as attorney in fact, brought an action against T. Martin and caused property to be sequestered.
The indebtedness to her by the defendant in the suit, T. M. Martin, was $600, due on trees sold to the defendant in that ease, and $190 ■for timber she claimed was destroyed by him.
She made the usual allegations for a writ of sequestration, and described the property she desired to have sequestered, and which the sheriff sequestered and took into his possession on the 10th day of December, 1891.
On defendant’s motion this writ was dissolved for the reason that ■she had no privilege that would sustain a sequestration.
The property sequestered was claimed at the time by a partner•ship, of which H. S. Crow, Z. Martin, L. L. Crow and T. M. Martin were the members.
The partnership was dissolved; the three partners who succeeded to the rights of the partnership brought suit against the sheriff who ■executed the writ of sequestration, against Mrs. Mower and her ■husband, and against É. C. Drew, agent, for damages in solido by ■the illegal sequestration.
One citation for Mrs. Mower and husband was served on E. O. ■Drew, agent.
Another addressed to the same parties was served on O. R. .Mower, the husband, personally, who was temporarily in the parish ■on the 10th day of December, 1892.
They, Mower and wife, subsequently, interposed the plea of want ■of jurisdiction ratione materise to try a cause against them, being ¡absentees, which was overruled.
They also interposed the plea of estoppel and pleaded the pre,-scription of twelve months, also no cause of action.
*1223 The answer of the defendants is a general denial.
The judgment of the District Court condemns the defendants, B. M. Manning, sheriff, O. R. Mower and P. P. Mower in solido in the sum of $5004.25, with legal interest from judicial demand.
Prom the judgment they appeal. ■
The sheriff having made service of the citation to Mrs. Mower by handing it to her husband the question arises as to whether it is such a service as binds, and is legal as to her, an absentee.
The service upon Drew, agent, is illegal, for he was without authority to represent her in the suit.
It therefore remains for us to determine the legal effect of the citation to Mrs. Mower served upon Mower, husband.
The absentee may be cited in answer whenever he is found within the limits of the State.
The service was legally made upon the absentee Mower, in so far .as he is personally concerned.
If the petition and citation be directed against a married woman the service may be made by delivering it to the husband.
A defendant who is an absentee may be brought within the court’s jurisdiction by personal service.
The service is personal when delivered to himself.
The wife was an absentee, and no personal service was made as to her.
The husband’s authority was sufficient to bind her to respond in so' far as relates to a citation pure and simple.
In this case if it be decided that the service is legal against the wife it will have the effect of constructively bringing her into court, and of conferring jurisdiction.
The condition under which jurisdiction arises is personal presence.
By the presence of her husband she is not present personally nor ■constructively.
One of the elements to confer jurisdiction is lacking — the service upon the wife personally.
The personal service upon the husband is not a personal service as to her.
The case of Pennoyer vs. Neff, — U. S. — , to which our attention is invited, has no bearing.
The question is not one of constructive service vel non, but whether the wife, an absentee, can be brought into court by citation on her husband, absentee, who happens to be temporarily in this State.
*1224 The service, in so far as she is concerned, not being personal, the court was without jurisdiction.
The plea to the jurisdiction invoked as an admission of citation is not such an admission as waives citation, it having been interposed by an absentee.
As against her, citation is the basis of the action. The plea as presented covers both want of citation and jurisdiction.
The court was without jurisdiction because the defendant had not been legally cited.
The amount claimed being an allegbd paraphernal right of the wife, the husband having joined his wife to authorize and assist her in the suit, the defendant contends that plaintiffs have no right of action against him.
Every person is responsible for the damage .he has occasioned by his negligence or imprudence.
If defendant’s wife has committed a trespass, a tort, as is alleged, and thereby has caused damages, he who has [authorized, joined and aided in the act is also bound.
He joined in the petition and all subsequent proceedings of sequestration. It is true that had he declined to authorize his wife she possibly would have obtained the authorization of the court.
But the court, without reference to the character of the action or the nature of the claim, would have granted the authority.
She would have appeared before the court quoad the suit as a femme sole.
The court would have been indifferent and impartial as to the result]
The husband is an active party to the suit, with full knowledge of the character of the claim, and persisting in the trespass by continuously giving authority and consent to the trespasser, and has taken an active part in the proceedings from beginning to end.
Those who commit tc rts or assist in their commission are bound in solido for the damages occasioned. 15 An. 583.
It is also sought to hold the sheriff responsible.
He was ordered to sequester certain property.
It is described with particularity. It was not left to him to sequester the property of the defendant, with some discretion to determine whether or not certain property belonged to the defendant or to a third person.
By a court of competent jurisdiction he was commanded to sequester property described and referred to in the order.
*1225 In Brainard vs. Head, 15 An. 490, this court held: “A sheriff has no legal right to question either the facts or the law of any decree, order or judgment rendered by a court of competent jurisdiction. His duty is to obey and execute the lawful mandates of the court, and in the discharge of this duty he is justified and protected by the law, and as a consequence can not be held liable in damages.”
The duty was as pronounced and as imperative in the case at bar.
Those who were instrumental in obtaining an illegal order may be held in damages.
But not the executive officer who only obeyed the mandate of the' courts.
A plea of estoppel was interposed, based on an alleged consent of one of the defendants, H. L. Orow, to the issue of the writ of sequestration and on an agreement of another of the defendants.
The facts urged as an estoppel against the former, H. L. Orow, are that he held a conversation with Drew,’agent for Mrs. Mower, in which he expressed the desire of supplanting Martin, as party to the contract with Mrs. Mower for trees to be sawed at their sawmill.
That upon this conversation the agent sued out the writ of sequestration; that Orow pointed out the property to be sequestered, and that his copartner was appointed the sheriff’s keeper.
The agreement that the defendant avers is denied.
The testimony upon the subject is contradictory and irreconcilable.
The purpose of the agreement and the conflicting testimony are such, that the rights of the parties will not be considered affected by them in any manner.
Such an agreement, if entered into, does not recommend itself to the instrumentalities of the courts for enforcement.
That one of the partners was appointed keeper, under the writ of sequestration, and retained the Keepership during thirty-three days, is not a waiver of any real right he may have had on the property.
It is not similar to the owner who points out his property to be sold. In this case, during the pendency of the suit, he consented to act as keeper.
In so far as relates to T. M. Martin, another defendant, the facts are that in 1891 he made a contract with C. R. Mower for timber of the lands of Mrs. H. P. Mower, in consideration of the delivery to her of one-tenth of all the lumber sawed.
*1226 This contract expired about the time that the sequestration was issued.
It is in evidence that Zach. Martin, H. S. and L. L. Crow entered into an agreement in May, 1891, by which they became jointly interested in his timber contract with Mrs. Mower.
Under this agreement they erected a saw-mill on the lands of Mrs. Mower, and sawed timber from her land, from June, 1891, until December 10, 1891. During that time the tenth stipulated for Mrs. Mower was not paid.
On the last mentioned date Mrs. Mower instituted suit and sued out a writ of sequestration, claiming an amount due for the tenth of the lumber.
At the expiration of thirty-three days Mrs. Mower bonded the property and delivered it to T.'M. Martin, who, with Zach. Martin, operated the mill until the sequestration was finally dissolved.
In 1892, Martin and Drew, agent, entered into an agreement, reciting that, whereas, Drew, agent, had executed a forthcoming bond for the release of the property sequestered in the case of Annie P. Mower and husband vs. T. M. Martin, they agreed that he (Martin) should have possession of and use the property sequestered.
That the suit was to remain in court until an accurate statement could be furnished of the property, and his indebtedness fixed.
He abandoned all claim for damages and lumber.
The previous existing contract for timber from Mrs. Mower’s land was acknowledged and renewed.
In June of that year the sequestration was dissolved on the ground that Mrs. Mower had no privilege to sustain a sequestration.
No reference was made to this agreement.
In June, 1898, the partnership affairs of the firm of Martin & ■Crow was settled, T. M. Martin withdrew from the partnership, and the remaining members of the partnership were subrogated to his rights.
It is in place to now state that T. L. Martin, having waived all right to lumber and damages, he had none to transfer, and as to this claim plaintiffs are absolutely without a cause of action.
The plea of prescription is also interposed, viz.: the prescription •of one year.
Twelve months and three days had elapsed iron the date of sequestration to the date citation was served.
*1227 Prescription runs from the day on which the damage was sustained. •C. O. 3637.
The suit is for damages for wrongful seizure of property.
The loss and damage caused to plaintiffs by the seizure made on the 10th day of December, 1891, was presented. Service was made ■on the 12th day of December, 1892.
Plaintiffs contend that the damages were accruing from day to day, and only prescribed from the time it actually occurred. This is indisputable as to the damages to the mill and other property if any occurred from day to day after the seizure.
Suit was not brought for the lumber which was sequestered, but for damages caused by its seizure.
The damages caused on the 10th day of December, 1891, are prescribed, being for damages in the loss of lumber taken that day.
It remains for us to determine whether any damages have been ■proven as accruing to the plaintiffs, personally.
The property on the day it was sequestered was valued by the sheriff and the appraisers at $2125.
One of the partners testifies that the mill shed leaked, and as a result the operations of the mill were interrupted in rainy weather, which was frequent at the time; the roads were in bad condition ■and heavy, transportation over them was difficult, lumber was not in ■demand and the profits small.
Disinterested witnesses testify that the mill would not have been ■operated half the time.
The damages claimed are entirely for profits the parties think ■could have been realized.
The whole case depends on varying estimates.
The records do not disclose that any profits were realized just pre»ceding the sequestration or afterward.
There is proof, but it does not impress us as showing profits — only "the reverse.
The possible profits of an enterprise must be proven with some ■degree of certainty, and should not be made to depend upon gross estimates of possible revenues and of possible expenses without reference to details and particulars.
The contingencies attending profits or the possibilities of losses forcibly present themselves on an examination of the testimony.
“We have earnestly applied ourselves to find damages proven.
*1228 The evidence is not such as to establish the claim made.
Were we to follow the estimates of interested witnesses a decree would be entered for a large amount without testimony satisfactorily showing the actual cost of operating a mill and of the possible price of its products in the markets.
It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that plaintiffs’ demand be rejected and their suit dismissed at their costs in, both courts.