**MILES et ux. v. KILGORE, Marshal, et al.**

**No. 5872.**

Court of Appeal of Louisiana.
Second Circuit.

April 28, 1939.

Rehearing Denied June 28, 1939.

Certiorari Denied Oct. 30, 1939.

H. D. Montgomery, of Monroe, and W. Decker Moore, of West Monroe, for appellants.

J. B. Dawkins, of Monroe, for appellees.

TALIAFERRO, Judge.

The People's Homestead & Savings Association, of the City of Monroe, Louisiana, hereinafter referred to as the association, leased by the month to A. R. Diffey a certain house and lot situated in the village of Baucomville in Ouachita Parish. This village is within the limits of Ward 5 of said parish as is also the City of West Monroe, the City Court of which has jurisdiction, within certain limitations, of ejectment proceedings throughout the ward. Act No. 59 of 1930. Diffey defaulted in rent payments and on June 11, 1937, ejectment proceedings were instituted against him. He did not contest the case and judgment was rendered against him by default. On being notified of the rendition of the judgment he vacated the leased premises.

It appears that Diffey sub-leased one half of the house (two rooms) to one A. B. Miles, who, with his wife and two grown sons, occupied the same and were therein when said ejectment proceedings were instituted. They did not vacate their part of the house when Diffey did, notwithstanding they were in arrear of rent at the time. The association knew nothing of the sub-lease but Diffey's right to do so was not interdicted by it. The Miles family members had personal knowledge of the suit against Diffey.

The City Marshal, R. L. Kilgore, visited the leased property several times after Diffey moved out and requested the Miles family to vacate but they did not do so.

In order to secure complete possession of the property, on July 20, 1937, the association caused a writ of possession to issue under its judgment against Diffey wherein it is recited that Diffey had failed to comply with said judgment by vacating the leased premises within 24 hours after its rendition, and the Marshal was commanded to forthwith deliver to the association the full possession of said premises, and to accomplish this, he was directed to break open the doors and windows if such were found to be locked. Immediately after the writ was delivered to the Marshal he executed same by ejecting Mrs. Miles and her two sons from the house and by removing therefrom the household effects, furniture, etc. The house was then nailed up and

possession thereof delivered to the association. No force was necessary to execute the writ. Mr. Miles was at the time absent.

A. B. Miles and his wife instituted this suit to recover damages from the Marshal and the association alleged to have been sustained by them as a result of said ejectment and the removal of the furniture and household effects from the building. He sues to recover for damages to the furniture, etc., while exposed to the rain during the night, and she sues for the pain, suffering and inconvenience experienced by her. They allege that their possession of the leased premises was lawful and that the Marshal, acting upon instructions from the association, ejected them without any order of court or other legal warrant.

The association generally denied all of the allegations of the petition. The Marshal admits dispossessing plaintiffs, as by them alleged, but avers that he did so in his official capacity by authority of an order of the City Court of the City of West Monroe, Louisiana, issued in the suit against Diffey. Both defendants deny plaintiffs' right to recover any amount herein.

There was judgment in favor of Mrs. Miles for $25. Mr. Miles' demands were rejected. Defendants appealed.

The primary question of law propounded in this case is:

Was it necessary to the efficacy of the ejectment proceedings, based upon a breach of the lease contract for nonpayment of rent, to make the sub-tenant a party thereto? Or, did the judgment against Diffey alone authorize ejectment of all persons occupying any portion of the leased premises without further judicial proceedings?

■ So far as concerns the City Marshal, it is clear that he may not be held in damages to the ejected persons since he is clothed by law with authority to execute judgments in ejectment cases and acted under an order of a court of competent jurisdiction specifically commanding him to perform the very acts for which he is sought to be mulcted in damages. His duty was of a ministerial character. He was without right to question the legality or propriety of the issuance of the order committed to him officially for execution.

In Crow v. Manning, Sheriff, 45 La.Ann. 1221, 14 So. 122, it was held:

"A sheriff acting under the directions of a court of competent jurisdiction, and carrying out its orders, is not responsible in damages."

The same principle was announced in the early case of Brainard & Geoffroy v. Head, Sheriff, 15 La.Ann. 489, and reaffirmed in Ludeling v. Sheriff, 50 La.Ann. 118, 121, 23 So. 94.

■ Diffey, the lessee, did not fully discharge his obligations to the association when he moved from the leased building with his household effects. It was his duty to deliver the property into his lessor's possession at the termination of the lease for any cause, free of other occupants. The judgment against him did not abate on his removal but continued in effect until complete execution thereof was had.

■ There was no privity of contract, express or implied, between the association and A. B. Miles. He was the tenant of Diffey. His rights as regards the part of the building he occupied could not be greater than those of his own lessor. A dissolution of the lease contract between the association and Diffey for any legal cause of necessity put an end to any sub-lease contract made by the latter. The lease to Miles ceased to be enforceable as against the association. This would be true even though Miles had paid all rent due by him which, it appears, he had not done.

■ Article 2712 of the Revised Civil Code reads:

"The lessee may be expelled from the property if he fails to pay the rent when it becomes due."

Article 2713, dealing with the ejectment of defaulting tenants, in part, reads as follows:

" * * * and if, three days after notice of the judgment he [the lessee] has not obeyed, the judge or justice of the peace *may order that he shall be expelled and that the property shall be cleared by the sheriff or constable at his expense.*"

And Article 2714 authorizes the forcing of doors and windows if found shut.

Section 2155 of the Revised Statutes of 1870 prescribed the details of procedure to which landlords had to resort in order to summarily eject defaulting tenants or tenants in possession of the premises after the lease contract had expired by limitation or otherwise. This law has been in material respects amended many times; lastly, in 1936, Act No. 200.

Inter- alia, it is provided in this last amendment that if the tenant does not within 24 hours after rendition of judgment of ejectment against him comply therewith, it shall be the duty of the judge to issue forthwith his warrant directed to the constable, marshal or sheriff of his court, *"commanding him forthwith to deliver to the lessor the full possession of the leased premises,"* and to levy the costs out of such goods and chattels of the tenant as is found therein. It is also provided in this amendment that in the event the officer finds the doors and windows of the house locked, it shall be lawful for him on a warrant issued to that effect, "to break open the doors, windows * * * of the premises, in the presence of two witnesses *and clear the leased premises of property therein, in order to put the lessor in full possession of the leased premises."*

The various articles of the Civil Code, as is also true of Section 2155 of the Revised Statutes and its several amendments, make no mention of the rights or status of sub-tenants found in the leased premises by the officer executing the judgment of ejection, nor do they attempt to specifically direct the officer as to his course should he find persons therein other than the lessee, or therein after the lessee has vacated the premises.

The fact that so many laws on the same subject matter omit any reference to a sub-tenant, in such circumstances, would seem significant. Evidently reference to the lessee includes those holding under him. The law is mandatory that the executing officer "clear the leased premises of property therein" and "deliver to the lessor full possession" thereof. This may only be done by ejecting all persons found in the leased building or on the leased premises and by removing therefrom the contents of the building or buildings. If such a procedure be not authorized by this law, which was designed to afford protection to landlords against the often unreasonable delays of ordinary procedure, then the character of the law as a summary measure is, to a large extent, emasculated and it loses, in a case such as we are dealing with, much of its potency.

The right of occupancy of a sub-tenant, regardless of the terms of his contract with the lessee, is definitely subordi-nated to the rights of the original lessor. His effects in or on the leased premises, to the extent of rent due by him to the lessee, may be subjected to the payment of rent due by the lessee to the lessor and any payment of rent by the sub-tenant to his lessor in anticipation "does not release him from the owner's claim." R.C.C. art. 2706.

All persons are presumed to know the law. Whether they do in reality know it or not is immaterial as its effects are visited upon all alike. One who subleases property is held to know what the penalty will be if the lessee breaches his contract of lease by not paying his rent. The foundation giving way carries with it the superstructure. This being true, a sub-tenant is without just grounds of complaint when he is forced to give up property, the subject of his lease, through the failure of the lessee to discharge his obligations to the lessor. The sub-tenant's recourse, if aggrieved, is against his own lessor. Audubon Hotel Co. v. Braunning, 120 La. 1089, 46 So. 33, 124 Am.St.Rep. 456.

Strange as it may seem, there appears to be no precedent for our holding herein. We have searched diligently for one without success. The absence of a precedent construing laws so well known and so often resorted to, in the light of facts like or similar to those in this case, should argue forcefully in favor of the thought that there is near unanimity of opinion as regards the meaning and intendment of such laws.

We are clear in the opinion that the law governing ejectment proceedings by landlords does not contemplate nor require that sub-tenants shall be made parties thereto as a condition precedent to the right to eject them as a means of restoring full possession of the leased premises to the lessor. If this were not true, it is easy to conceive of a case, involving a large hotel or apartment house, wherein the lessor would be subjected to interminable delays and a multitude of law-suits before he could regain possession of his own property.

For the reasons above set forth, the judgment in favor of Mrs. Miles, appealed from, is annulled, reversed and set aside, and her suit is dismissed at her cost.