American Creosote Works, Inc., seeks judgment against Boland Machine Manufacturing Company, a partnership, and J. Edgar Monroe, Percy Monroe and F. Lloyd Monroe, the members of the said partnership, for $1924.81, the agreed purchase price of twenty-four creosoted fir piles, which the plaintiff agreed to sell and the defendants agreed to buy, together with sales tax at one per cent and $25, the price agreed upon for the loading of the piles on a barge furnished by defendants. Defendants contend that they did not receive the piles.
There was judgment for plaintiff as prayed for and defendants have appealed.
The contract was executed on a printed form of plaintiff corporation, which was dated August 4, 1943, and under it defendant agreed to accept and pay for twenty-four creosoted fir piles. The blanks in the printed form were filled in in typewriting and in one of these forms appeared the following: "F.O.B. Southport (New Orleans) Louisiana plant, loaded on customer's truck." On the last page of the printed form, among other stipulations, appears the following:
"4. Buyer agrees to receive material when and as delivered on cars at seller's plant. It is specifically agreed that there shall be no claims of any kind after material is delivered as above."
On August 20, 1943, a supplemental agreement was entered into, reading as follows:
"In accordance with telephone conversations with Mr. Wright, of the Boland *Page 343 
Machine Manufacturing Company, we are to load the piles called for on this order upon his barge at our Southport plant wharf — Saturday August 21, 1943.
"This extra handling is to be charged to customer at alump sum of $25.00."
During the night of August 20th or very early on the morning of August 21st, the defendants caused to be delivered at the wharf of plaintiff in the Mississippi River a barge on which the piles were to be loaded.
Although defendants do not admit it, there is no evidence which tends to contradict that offered by plaintiff to the effect that the twenty-four piles which complied with the requirements of the contract were loaded by plaintiff upon the barge which had been sent to its wharf by or on behalf of defendants, and that this loading was completed at or shortly before 11 o'clock on that morning, August 21, 1943.
There is likewise no evidence to contradict that offered by defendants to the effect that they were advised by plaintiff that the barge should be ready for loading by 7 A.M. on August 21st, and that plaintiff "would have the barge ready, loaded, approximately noon (August 21st)." The barge had been furnished to defendants by Bisso Coal Towboat Company, which company had also furnished the tug-boat which delivered the barge and which was to tow it, when loaded, from the wharf of plaintiff to the point at which defendants desired it to be placed. After delivering the barge at the wharf of plaintiff, the tug-boat did not wait for the loading but was to return at about noon.
At just about noon, a fire broke out on the wharf of plaintiff and its employees, in an effort to prevent the loss of the barge and the piles which had been loaded upon it, cut the barge loose from the wharf and set it adrift in the Mississippi River. However, the fire had already spread to the barge and, while neither party offered proof to show it, it is obvious that the piles were totally destroyed.
Plaintiff contends that the title to the piles had passed to defendants and that they are therefore liable for the purchase price. Defendants maintain that since they had been advised that the loading would be completed at approximately noon, title had not passed to them when the piles were destroyed, and that therefore the loss should be borne by plaintiff.
Counsel for defendants in his brief argues that for three reasons plaintiff should bear the loss; first, he says that the contract was for the purchase of indeterminate or uncertain objects — twenty-four piles from a larger supply — and that therefore under the provisions of Article 1915 of our Civil Code they were not at the risk of plaintiff since this article provides that where the thing sold is uncertain or indeterminate it is at the risk of the creditor only from the time he is in legal default for not receiving the thing after it has been tendered." As a second reason, counsel argues that plaintiff has not proved that the piles were destroyed by a fortuitous event and has not shown that it, itself, was not at fault in not preventing the destruction. And, as a third reason, counsel shows that at the time of the loss the piles had not been counted and measured in the presence of defendants, and he argues that hence the contract of sale itself was never completed.
Plaintiff maintains, on the contrary, that the articles sold were not indeterminate and says that they were not taken from a larger store or supply but that these particular piles were bought from a producer of raw or untreated timber for the purpose of filling this particular contract, and were treated or creosoted for this order, and that therefore title to them passed as soon as they were ready for delivery. Plaintiff further contends that even if title did not pass to the defendants until delivery was effected still the title had actually passed here because the contract called for delivery on the barge and such delivery had actually been completed when the loss occurred.
In support of their argument that title to the piles passed to defendants as soon as the creosoting process had been completed, counsel rely upon certain articles of our Civil Code which we now quote:
"Art. 2456 Contract of sale — When complete. — The sale is considered to be perfect between the parties, and the property *Page 344 
is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
"Art. 1909 Delivery of object by consent — Thing held at risk of creditor. — If the obligation be to deliver an object which is particularly specified, it is perfect by the mere consent of the parties. It renders the creditor the owner, and although it be not delivered to him, puts the thing at his risk from the date of the obligation, if the contract is one of those that purport a transfer."
"Art. 2467 Buyer's risk — Contract of sale complete. — As soon as the contract of sale is completed, the thing sold is at the risk of the buyer, but with the following modifications.
"Art. 2468 Loss pending delivery — Want of care on part of seller — Liability. — Until the thing sold is delivered to the buyer, the seller is obliged to guard it as a faithful administrator; and if, through want of this care, the thing is destroyed, or its value diminished, the seller is responsible for the loss."
Counsel point to certain decisions of our Supreme Court which they say sustain their contention that the title passed as soon as the processing of the piles was completed, and they also cite Planiol's "Traite Elementaire du Droit Civil." 6th Edition (1912), Vol. II, in which appears the following:
"The risk passes to the creditor of the thing at the moment he becomes the owner. Furthermore, the redactors of the Code have themselves given in strong and clear terms a commentary on this disposition; 'The creditor is the owner at the instant where the parties agreed that a delivery shall take place. It is no longer a simple right to the thing that the creditor has, it is a property right. If, therefore, it perishes by a force majeure or by a fortuitous event since the time it was agreed that a delivery was to take place, the loss is on the creditor following the rule 'Res Periit Domino.' " (as translated by counsel for plaintiff.)
Counsel for defendants counter with the argument that the authorities relied upon by plaintiff have no application for the reason that here the object of the sale was indeterminate and not certain, and they maintain that since the piles, though processed had not been appropriated to this particular contract, and counted and measured and delivered to defendants, title had not passed and that they were therefore still at the risk of the seller. The facts shown here convince us that the object of the sale was not indeterminate since these particular piles were purchased for this particular purpose and were not taken from a larger supply but were purchased from a producer for the particular purpose of processing them for this contract. But we are much concerned with the additional fact that the piles as purchased from the producer for the purpose of filling this contract required treatment or processing before they could be said to be ready for delivery to the purchaser. It is obvious from this that the Codal articles relied upon by plaintiff cannot be given the full effect contended for because surely it cannot be said that the sale was complete in the sense that title passed as soon as there existed "An agreement for the object and for the price thereof." Surely when a seller agrees to manufacture an article or to process it from its raw state and to put it into a condition in Which it may be used by the purchaser, it cannot be said that the sale is complete in the sense that the title has passed until the processing has been completed and the article has been put into a place from which it can be obtained by the purchaser.
[1] But, regardless of this feature of the case, we think it clear that title to the piles here had passed to the defendants at the time of the fire since even if their theory be accepted, and if it be held that the object of the contract was indeterminate or that such a sale as was contemplated by this contract was not complete until delivery was made, it is obvious here that delivery had been made in accordance with the terms of the contract at the time the fire originated. The contract, as originally written, contemplated delivery on a "truck" *Page 345 
(or trucks) of the purchaser and, as amended, it provided for delivery on a barge to be furnished by the purchaser. This delivery had been effected. The uncontradicted evidence shows that each of the piles had been loaded on the barge and that they had been measured and counted.
[2] Counsel for defendants maintains, however, that there was no delivery since the time given by plaintiff for the completion of the loading — that is "approximately noon" had not yet arrived. We think that counsel confuses the time at which title passes with the time at which possession is to be taken.
When title passes the thing sold is at the risk of the purchaser and even though possession is not to be taken until some later time, the Codal articles make it clear that from the time of the passing of title, the thing sold is at the risk of the buyer. The only obligation of the vendor in whose possession the thing sold remains is to guard it as a faithful administrator."
Defendants rely on certain cases involving losses sustained by goods on railroad cars or on conveyances of other carriers. They particularly cite Sentell v. Texas Pacific R. Co., La. App., 160 So. 847. The rules followed in those cases have no application here. What constitutes delivery to a carrier is often controlled by the custom which has been established between the carrier and the shipper, and is also governed by Federal or State laws concerning the obligations of carriers. The situation here is controlled by the Codal articles governing sales, to which articles we have already referred.
Counsel for defendants assert that there had been no counting and measuring in the presence of defendants or their representatives. But there had been a counting and measuring as is shown by the uncontradicted evidence which is in the record. If defendants, themselves, wished to insist on a counting and measuring in their presence this could have been effected at any time between the completion of the processing or creosoting and the time set for the removal of the barge. There is nothing to contradict the testimony that the piles, as loaded on the barge and as delivered to the defendants, complied with the specifications of the contract.
Since plaintiff has proved that it complied with its contract by placing the object of the sale in the place specified, it is plain that the obligation to pay for the piles rested upon the defendants and that if they would escape the obligation of their contract the duty was on them to show some reason which would relieve them. They had made no showing of any such reason. If the piles, after title to them had passed to defendants, were destroyed through negligence of plaintiff or any of its employees, then possibly defendants would have had a cause of action in damages, and possibly they might have asserted it by reconventional demand. They have not done this and in defense of the suit have not set up a claim that there was negligence on the part of plaintiff.
The entire defense is based on the theory that the time which was set for the completion of the loading of the tug was a part of the contract of sale itself. We think that the time was merely set as a convenience to the purchaser and that in no way did the completion of the contract of sale become affected by the fact that the purchaser was told that he could call at a certain time to get the goods which he had agreed to buy.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.
WESTERFIELD, J., absent, takes no part. *Page 346