FOURNET, Justice.
 

 The plaintiff instituted this suit to recover the sum of $1,924.81, the price of certain creosoted fir pilings allegedly sold and delivered to the defendant, and the matter is now before us for a review of the judgment of the Court of Appeal for the Parish of Orleans affirming the judgment of the district court in favor of the plaintiff, as prayed for. (28 So.2d 342.)
 

 On August 4, 1943, the plaintiff, the American Creosote Works, entered into a contract with the defendant, Boland Machine & Manufacturing Company, a co-partnership. This contract is incorporated in one of the plaintiff’s order forms. According to its terms the plaintiff agreed to supply the defendant with 24 creosoted fir pilings treated by what is known as the
 
 *837
 
 Full Cell Bethel Process and conforming to Navy specifications No. 39P14a (meaning 13 inches in diameter 3 feet from the butt or bottom end of the tree) in four lots of six units each, i. e., six 75' long, six 80' long, six 85' long, and six 90' long, at a price of 95^ per lineal foot, f. o. b. the plaintiff’s plant at Southport in New Orleans, at which place they were to be loaded on the defendant’s truck, subject to inspection and acceptance by the defendant. Subsequently, according to a letter of August 17 confirming a telephone conversation had with the defendant, the contract was amended to provide for the loading of these pilings on the defendant’s barge at the plaintiff’s Southport plant wharf on Saturday, August 21, 1943. An extra charge of $25 was to be included in the purchase price under this new agreement for the barge loading.
 

 Since the plaintiff did not have these fir pilings in stock, they had to be specially ordered for treatment according to the detailed specifications and after they were processed the plaintiff, on August 20, under the provision in the contract calling for one day advance notice, notified the defendant by telephone to have a barge at its wharf so that loading might begin at seven the next morning, for delivery around noon. Accordingly, the defendant, on Friday afternoon, ordered a barge from the Bisso Coal and Towboat Company and it was tied up at the wharf ready for loading at the specified time. The actual loading was completed about eleven. The defendant, upon advice from the plaintiff, likewise asked the Bisso people to have a tug pick the barge up about noon, but before that time a fire started on the wharf of the plaintiff company and spread to the barge. When the tug did approach the wharf as instructed, the barge had been cut away from the wharf in an effort to save it and was drifting down the river enveloped in flames.
 

 The defendant denied liability, contending that under the contract title did not pass' to them until the property was loaded on the barge and tendered to them or their agent for inspection and acceptance.
 

 The plaintiff, relying on Articles 1909, 2456, 2458, 2467, and 2468 of the Revised Civil Code, contends that title to these pilings passed to the defendant the moment they were treated and removed from the processing shed; in any event, that title passed when the pilings were measured, counted, and loaded on the barge.
 

 In passing on these issues, the Court of Appeal found that neither these codal articles nor the cases relied on by the defendant were applicable under the facts of this case, but concluded that title to the pilings had passed to the defendant prior to the fire inasmuch as they were, at that time, loaded on the barge furnished by the defendant in accordance with the court’s construction of the contract, the fact that the defendant was not to take possession
 
 *839
 
 of them until a later time, i. e., around noon, being immaterial.
 

 We think the court’s conclusion with respect to the inapplicability of the codal articles is correct. A mere reference to these articles will show their general tenor to be that the sale of an object is perfect and complete and the article is at the' risk of the buyer as soon as there exists an agreement as to the object' and price, although actual delivery has not been made and the price has not been paid, and that once the sale is perfected and completed, the only responsibility then resting on the seller is that of guarding the goods as a faithful administrator. But this rule applies only
 
 “if the contract is one of those that purport a transfer.”
 
 Article 1909. The contract in this case does not purport to be a transfer of the pilings to the defendant. On the contrary, its terms show very plainly that the pilings are to be transferred to the defendant only after they have been tendered for inspection and have actually been accepted. (Italics ours.)
 

 Under this contract the plaintiff agreed to furnish the defendant with goods that had to meet certain specifications, that is, the pilings had to be of definite lengths and size and they had to be treated with creosote under a special process. While on the reverse side of this contract there is to be found, along with other printed provisions, the general stipulation that the “Buyer agrees to receive material when and as delivered on cars at Seller’s plant. It is specifically agreed that there shall be no claims of any kind after material is delivered as above,” this general stipulation is not controlling in this case for it has been abrogated by the very positive provision on the face of the contract, where all of the detailed specifications and conditions are clearly set out, that the pilings were to be subject to final inspection and acceptance by the defendant at the plaintiff’s plant.
 

 The intention of the parties as to when the pilings would be transferred to the defendant is not only thus clearly shown on the face of the contract itself, but is further demonstrated by the oral and documentary evidence in the record unmistakably showing the property belonged to the plaintiff until delivery was completed and that delivery could not be completed until the defendant, who was given the right to inspect and check it, had actually inspected it and accepted it, such acceptance being evidenced by the defendant’s signature on the delivery slip prepared for that purpose which constituted the defendant’s acknowledgment that the goods had been received in good condition and accepted.
 

 We think our conclusion that the plaintiff did not consider ownership of the property passed to the defendant until after delivery had been completed is evidenced by its own construction of the contract as expressed in its letter to the defendant on August 27, 1943, a few days after the fire, wherein it is said: “Under the terms of
 
 *841
 
 our insurance policies
 
 our liability ends with completed delivery,
 
 and both the insurance adjustors and our attorneys have advised me that our policies will not cover this damage.
 
 After delivery is completed,
 
 it is customary for the then owner of the pilings to have them insured * * And the plaintiff’s understanding of the time when the delivery could be considered as completed is emphasized by the testimony of Mr. Theester A. Hamby, the plaintiff’s secretary-comptroller, to the effect that it was not necessary for the defendant to have the pilings insured until “the time he (defendant) takes possession of them, or when they come under his control — when they leave our control.” (Italics and brackets ours.)
 

 And there can be no question but that the defendant had the right to check and inspect the pilings before accepting them, as stipulated in the contract and also in accordance with the custom of the plant. According to the testimony of the plaintiff’s employees, the pilings ordered were stored in a pile on the yard after they had been creosoted, pending delivery. After the barge ordered by the defendant was tied up to the wharf the office furnished the yard checker with a card containing pertinent information relative to the specifications of the order being supplied the defendant. The checker measured and counted the pilings against this card to see that they met specifications before they were loaded on flat cars that took them from the yard, across the levee, and down to the wharf where they were turned over to another checker. This checker was also furnished with a card containing the specifications covering the order and he rechecked the pilings as they were loaded on the barge. After the last piling was loaded, this checker went back to the office and there filled out a slip listing the material that 'had been loaded under his supervision. This slip was left with the office force to be presented to the defendant customer or representative for signature at the time they were taken possession of, signifying the defendant’s acceptance and receipt of the goods in good condition.
 

 We therefore conclude that delivery was never completed under the terms of this contract and under the facts of this case and that title had not passed to the defendant at the time the pilings were destroyed by fire; consequently, their loss was at the risk of the plaintiff and not that of the defendant.
 

 For the reasons assigned, the judgment of the district court in favor of the American Creosote Works, as prayed for, and that of the Court of Appeal for the Parish of Orleans affirming the same, are reversed, and it is now ordered, adjudged, and decreed that the plaintiff’s suit be dismissed at its cost.
 

 McCALEB, J., recused