McBRIDE, Judge.
On December 18, 1948, plaintiff, Jake Sciambra, purchased from, defendant, Emblem, Inc., a television receiving set for the price and sum of $1,428.48, upon which he paid cash the sum of $450.00, and for the balance-gave defendant a note for $978.48, which was- secu.red by chattel mortgage. Plaintiff brought this suit to rescind and cancel the said sale, to recover the sum of $450.00 paid on account, and to compel defendant to cancel and return to him the promissory note for $978.48.
Defendant answered, admitting the execution of the -contract, but denying that it was indebted to plaintiff in -any 'sum whatsoever. Defendant reconvened, seeking judgment on the note for $978.48, with eight per cent interest thereon from January 18, 1949, until paid, with twenty-five per cent attorney’s fees on the principal and interest, and for recognition of its vendor’s lien and privilege and chattel mortgage on the television set, and for a judicial sale thereof by the Civil Sheriff, at public auction, without appraisement, for cash, to the highest bidder, and that the avails of the sale be applied pro tanto towards payment of the judgment.
After a trial on the merits in the court below, plaintiff’s demand was dismissed, and defendant recovered a judgment in re-convention as prayed for. Plaintiff has appealed.
Plaintiff operates a restaurant and bar in the City of.New Orleans, and'defendant is a retailer of television receivers- and other appliances. During August, 1948,. the -knowledge was widely circulated¡-th,at television reception would shortly be made available to the residents of- New Orleans. At that time, few, if any retail dealers possessed samples of television receivers, and, therefore,, sets were sold from illustrated pamphlets or catalogues, and for future delivery. Defendant .was one of those engaged in the retail selling-of television receivers for future delivery, and had in its -employ, as salesman on.a part-time' basis, one John Perino, whose, principal occupation was the “tile business.” . In order that Perino might acquaint himself with television sets for which defendant was taking orders for future delivery, he was given two pamphlets, one of which contained illustrations o’f the set as it would appear if *632 recessed in a wall, and the other illustrating the set in diagram form. Possessing this superficial information, Perino set out to sell television receivers. He contacted a friend, one Walter Clark, who was employed as a liquor salesman, and requested Clark to introduce him to his “accounts.”
On August 30, 1948, Clark brought Peri-no to Sciambra’s establishment, and Perino attempted to sell plaintiff, who was obviously interested, a television set. The substance of the sales discussion is in dispute. Sciambra, who had never seen a television receiver, agreed to purchase a set designated as an “RCA Clubman,” for the agreed price of $1,095.00, plus an installation charge of $200.00, taxes and freight $48.85, or a total amount of $1,343.85, to which was to be added finance or carrying charges. Perino testified that he had seen a television receiver only once, in Chicago-about three months prior to his negotiations with Sciambra, and that when he contacted Sciambra he had been engaged in selling sets for only about two weeks. Plaintiff made the agreed deposit of $100.00, and obligated himself to pay, when the set was delivered within sixty days, the further sum of $350.00 cash, and to execute a note for the unpaid balance. Qark, who was present during the entire discussion, corroborates in substance the testimony of plaintiff. The set • was delivere'd between December 18 and 20, 1948, and it was upon delivery of the set to plaintiff that the present controversy arose. When the set reached Sciambra, the television receiving mechanism was attached to a chassis and enclosed by a steel frame; photographs are in evidence, which reflect a naked television receiving mechanism. Plaintiff who had been laboring under the erroneous impression that a “beautiful cabinet” would arrive at a later date, with the service men to install the set, paid, the sum of $350.00 to defendant’s employee who delivered the set, and Sciambra later that day executed a note in favor of defendant for $978.48 for the unpaid balance, as well as a chattel mortgage securing the same, all as was previously agreed upon between the parties. On the following day, a representative of the Radio Corporation of America, the installation agent for defendant, called at plaintiff’s place to “check the wiring,” and observing the unenclosed television receiving mechanism, volunteered suggestions to plaintiff as to the manner in which a cabinet might be constructed to enclose the set. It was then that plaintiff realized that a misunderstanding may have occurred, and he immediately telephoned defendant’s office and advised that the cabinet had not arrived, and requested information as to when the arrival of the cabinet might be expected.
Sciambra was advised by an employee in defendants’ office that if he desired a cabinet, an additional charge of $150.00 would, be added to the original purchase price. Sciambra protested that the set which he-had agreed to purchase was enclosed in a. cabinet “like a radio or piano;” defendant’s employee informed plaintiff ’that he-was in error.
A day or so after Christmas of 1948, Sci-ambra, in company with a friend, Roy Martin, visited defendant’s business establishment and discussed the matter with Dr. Joseph LaNasa, who is the president and. principal stockholder of defendant company. Dr. LaNasa told plaintiff there were-five other people who ordered the set, and. that if he was not satisfied with it, Emblem, Inc., would send for it the next day and. return Sciambra’s money. Plaintiff agreed to this, and departed from defendant’s establishment, believing that the matter was. closed and that defendant would send for the set and refund the payments made on account of the purchase price. It seems,, however, that on the following' day defendant’s president had a change of mind! and thereafter lefused to send for the television set and return to plaintiff the payments previously made. The set is still in, its shipping crate in plaintiff’s place of' business.
It is plaintiff’s contention (1) that defendant's salesman, Perino, misrepresented!, the appearance of the set in describing it-to plaintiff as a “beautiful set,” ■ which plaintiff interpreted to mean that it would, be enclosed in a cabinet such as encloses, a piano or music box, and (2) that the sale-of the television receiver had been can— *633 celled by mutual agreement. On the other hand, defendant maintains that its salesman did not misrepresent the set to plaintiff, and denies that the sale of the television set had been cancelled by mutual consent.
After carefully considering the record, our opinion is that there was never a meeting of the minds as between plaintiff and defendant’s representative, with respect to the sale and purchase of the television receiver. We are impressed by the fact that Perino testified that he, Clark, and Sciam-bra, were present during the entire negotiations leading up to the sale; that prior to the sale, Perino had been selling television receivers for only approximately two weeks, and had effected only one sale prior to the date on which the sale was made, to plaintiff, and on that same day he sold five other sets. Television reception was very new in the New Orleans area, and the only informátion in Perino’s possession, relative to a description of television receivers, which he could convey to prospective purchasers, was “the diagram, the book, and I was told it comes on’a frame and placed in the wall,” and that was all Perino knew about television receivers; and when he showed the diagram to plaintiff, “I showed this particular set has no cabinet, it’s put in the wall,” and that it was. a “beautiful set.”
In answer to questions propounded by the trial judge, Perino testified:
“Q. Did you leave that pamphlet which was introduced in evidence, showing the screen of the television set, — did you leave that with Mr. Sciambra? A. I didn’t leave it with Mr. Sciambra. I gave Mr. Clark some later to give. That was the only one that I had.
“Q. I’m speaking about the little book? A. That is the only' one I had and I couldn’t afford to leave it.”
Sciambra testified that Perino “put the pamphlet on the desk and he showed me the picture; it’s fifteen by twenty, with this size picture, you can see the picture from any corner of the bar, it can be well seen. * * * So I bought the set with the understanding — and they made me vision it was a beautiful set, and what they sent me was just a skeleton and doesn’t make no comparison. Like if you buy an automobile and in the catalogue you see the automobile and then they send you a chassis and motor.”
Clark’s testimony is:
“Q. Mr. Clark do you recall ever hearing Mr. Perino say that the set when delivered would be delivered on an open steel frame, with the inner works, inner parts all exposed? A. No, I didn’t.
“Q. Do you remember or rather can you give us a general outline, some idea, from Mr. Perino’s description what the set would look like? (Objection by counsel which was referred to the merits.)
“Q. You were present throughout the whole of the conversation? A. That’s right.
“Q. You heard Mr. Perino selling the set to Mr. Sciambra? A. That’s right.
“Q. Now, what kind of looking thing was it that you personally thought was being sold? A. My thoughts, by Mr. .Per-ino’s having seen, one in Chicago or New York, was that .it was beautiful and I thought it would come in some sort of a cabinet, like a music box or something to that effect
******
“Q. What was your first reaction when you saw the set in Mr. Sciambra’s store? A. When I saw it, Mr. Sciambra called me; ‘Mr. Jake, they didn’t sell you this for a television?’ He said ‘Yes.’
“Q. Now, did you hear Mr. Perino say that in addition to the above cost, 1395, that Mr. Sciambra would have another expense? A. No, I never- heard anything like that.
“Q. Did you hear him say it would cost anything other than $1095 for the machine, $200 for installation, $38.95 for tax and $10 for freight. Did -you understand that would be the total expenses or costs that Mr. Sciambra would have? A. That is what he was selling.”
It is manifest that Perino was insufficiently informed as to the appearance and characteristics of the television receiver *634 which he undertook to sell, and that the television receiver was described, to Sciam-bra in a most vague and indefinite manner. Perino knew as little about the appearance of the set he sold to plaintiff as did plaintiff, who agreed to purchase it. Perino endeavored to sell a comparatively new contrivance, which he had seen only once, a few months before in Chicago, and plaintiff purchased only what he had imaginatively conceived from the vague sales description given him by Perino, and the receiver which he received turned out to be something other than he had actually intended to purchase, and, therefore, there was never a legal meeting of the minds, for what was vaguely described and sold by defendant was not what plaintiff actually believed he was buying. The evidence convinces us that he is entitled to the relief which he seeks.
Article 2439, R. C. C., provides:
“The contract of sale is an agreement by which one gives a thing for a price in current money, and the Other gives the price in order to have the thing itself.
“Three circumstances concur to the perfection of the contract, to-wit: the thing sold, the price and the consent.”
Under the provisions of R. C. C. art. 1881, the injured party has a right to avoid his contract made through error: “Engagements made through error, violence, fraud or menace, are not absolutely null, but are voidable by the parties, who 'have contracted under the influence of such error, fraud,' violence or menace, or by the representatives of such parties.”
This case is similar in several respects to Wellington-Stone Co. v. Thomas, 11 La.App. 242, 123 So. 410, 411, wherein the court annulled a sale because the buyer labored under 'a, misapprehension as to what he had agreed to purchase. The court said:
“The evidence seems clear to us that defendant wanted a davenport suite and not a settee suite,, and that he so understood his order when he gave it to plaintiff’s salesman. It is shown by the testimony that in' the New Orleans .territory a davenport is understood to be a sofa, which, when opened, may. serve as a bed, and, on the other, hand, it is contended'that in the Chicago trade a settee and a davenport are ordinary sofas, and the terms settee and davenport are interchangeable..
“Be that as it may, the testimony convinces us that defendant did not get delivery of what he intended to buy, and that in making the contract there was not the aggregatio mentium necessary to constitute a valid contract of sale. Defendant bought a sofa bed and plaintiff sent him a sofa settee.” . .
Having concluded that plaintiff is entitled to a rescission of the sale for the reason that the minds never met, and, therefore, there actually was no sale, we shall not discuss the legal question which might have been- presented had there been a sale. This legal question was raised by the plaintiff’s second contention, which, obviously, was in the alternative, that even if there had been a sale originally, it was cancelled by mutual consent. If There was no sale, then there was not ■ presented any legal question as to whether such consent would have been binding.
For the reasons above assigned, the judgment appealed from is annulled and reversed, arid it is now ordered that there be judgment herein in favor of plaintiff, Jake Sciambra, and against the defendant, Emblem, Tnc., rescinding and cancelling the sale of the television receiver, and, further, condemning defendant to return to plaintiff the sum of $450.00 cash and his promissory note for $978.48, dated December 18, 1948, and plaintiff is ordered to return to defendant the “RCA Clubman” television receiver; defendant’s reconven-tional demand is dismissed, and costs of both courts are to be borne by defendant.
Reversed.