**WESTERN UNION TELEGRAPH COMPANY, Appellant,**

v.

**CLUB DE PEANO, Inc., and John Lingle, Appellees.**

No. 16271.

United States Court of Appeals
Fifth Circuit.
April 5, 1957.

Blake West, Phelps, Dunbar, Marks, Claverie & Sims, Ashton Phelps, New Orleans, La., for plaintiff-appellant.

Louis B. Porterie, Edward J. Boyle, Clem H. Sehrt, Duke, Porterie & Davison, New Orleans, La., for defendant-appellee, John Lingle.

Before RIVES, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

The Western Union Telegraph Company, the plaintiff in the district court and the appellant here, leased from George Danziger and Frank J. Monteleone the premises at 828 and 824–826 Gravier Street, in the City of New Orleans, for a term expiring September 30, 1951. Western Union sub-leased the premises to Club DePeano, Inc. under agreements fixing the expiration date as September 30, 1951, the same as that in the original lease. Each of the sub-leases provided:

"At the expiration of this lease, or its termination for other causes, Lessee is obligated to immediately surrender possession, and should Lessee fail to do so, he consents to pay any and all damages, but in no case less than five times the rent per day, with attorney's fees, costs, etc."

The sub-leases also provided that the sub-lessee should "return the premises broom clean and free from trash, and in like good order as received by actual delivery of the keys to Lessor or Agent, the usual wear and tear excepted." On the execution of the lease Club DePeano deposited with Western Union, pursuant to the terms of the lease, Government bonds in the amount of $4,500 to secure the payment of rentals for April through September, 1951. The rent was paid through July, 1951. Club DePeano rented a portion of the leased space to Victor Saladino and another portion to Joseph F. Blasi, Sr. and others.

On September 29, 1951, Club DePeano sold to John Lingle "all the fixtures and equipment of the Club DePeano" and authorized Lingle to remove them. Lingle and Danziger agreed that the fixtures and equipment might remain on the property so that the presence of the equipment might aid in finding Danziger a new tenant, and that the tenant so found might become a purchaser of Lingle's furniture and equipment in place. Saladino had vacated the premises before September 30. Blasi and his associates rented the space occupied by them from Danziger for a brief time and later removed their equipment without incident and without controversy. On October 1, 1951, there was a delivery of the keys to the leased premises by Club DePeano to Western Union. On or shortly before November 12, 1951, Lingle undertook to remove the fixtures and equipment claimed by him as a result of his purchase from Club DePeano. He and Danziger disagreed as to what items were owned by Danziger and his co-owner and what had been acquired by Lingle. Lingle telephoned Michael DePeano, President of Club DePeano, who was then in Chicago, demanding that DePeano "straighten this thing out" or return his money. DePeano wired his friend Mike Campbell "Please remove vestibule and glass doors at 838 Gravier for me". Campbell, with two carpenters, went on the premises, removed the glass doors and the vestibule and mahogany paneling and delivered them to Lingle.

Club DePeano had cut an opening in a wall where none had been before, it had closed a preexisting opening and had erected a partition. In removing fixtures and equipment Lingle had taken electrical and plumbing fixtures, broken windows, and damaged plaster and walls. Mahogany paneling along a wall, which had been permanently attached to the building was removed by Campbell acting for Club DePeano. The premises were not left broom clean but, on the contrary, were littered with trash and debris.

Western Union brought its action against Club DePeano and Lingle claiming from Club DePeano penalty damages of five times daily rent, amounting to $6,177.50, and attorneys' fees, alleging there was no surrender of the premises until November 19, 1951. Claim was also made for cost of repairs caused by Club DePeano. Western Union claimed recovery from Lingle and Club DePeano for repairs alleged to be required because of Lingle's damage to property and for removal of property physically attached to the building and wrongfully removed. Club DePeano, by counter-claim and cross-claim, sought the return of its $4,500 deposit and judgment against Lingle for any amount which Western Union might recover against it. After a trial before the court without a jury a judgment was given Western Union against Club DePeano and Lingle for damages for which both were responsible, against Club DePeano alone for damages caused by it; judgment was given Club DePeano against Western Union for the amount of the deposit less unpaid rent for the months of August and September, 1951; and judgment was given Club DePeano

against Lingle on the cross-claim. No award was made to Western Union for its five-fold rent damage claim or for attorneys' fees, and the court's refusal to make such an award is the basis of Western Union's appeal.

■■■ The provision of the sub-lease requiring the sub-lessee to "return the premises * * * by actual delivery of the keys" to the lessor was complied with. The district court held that this effected a surrender of the premises. The holding was correct. Lingle, having then or theretofore arranged with the owners to keep his recently purchased fixtures and equipment on the premises became a tenant at will of the owners. When the lease to Western Union expired Club DePeano could not question the right of the owner to possession nor could it have done so even though its sub-lease had not also expired. Coyle v. Leigh, La. App., 36 So.2d 68. The Louisiana courts have upheld provisions giving the lessor a right to recover as liquidated damages for holding over a sum equal to five times the daily rental. Lama v. Manale, 218 La. 511, 50 So.2d 15, 23 A.L.R.2d 1312. Such damages are to be allowed only in cases where there has been a holding over by the tenant. The liquidated damage provision was to cover damages for holding over. If Club DePeano had remained in possession after both the original lease and the sub-lease had expired without permission of the owner, it might have then been urged that there was a holding over under the sub-lease. Miles v. Kilgore, La.App., 191 So. 556. Such is not the situation here.

When Campbell went upon the premises at the request of DePeano, he was attempting to aid Lingle in procuring the fixtures and equipment which Club DePeano had attempted to sell to Lingle and which Lingle was attempting to remove. This was neither a holding over by Club DePeano nor evidence of a holding over.

Western Union was entitled to damages for the breach of the lease covenants by Club DePeano and the judgment of the court has awarded them. No showing is made that the award is not supported by the evidence. The judgment is proper and it is

Affirmed.