## PITRE v. LOUISIANA HIGHWAY COMMISSION.

### No. 1490.

Court of Appeal of Louisiana. First Circuit.
June 14, 1935.

St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, for appellant.

Harvey Peltier, Hubert A. Lafargue, and P. D. Martinez, all of Thibodaux, for appellee.

LE BLANC, Judge.

Thomas Pitre, late husband of the plaintiff, Mrs. Blanche Gaudet Pitre, was employed by the Louisiana highway commission as foreman of its Raceland district unit in the parish of Lafourche. On February 26, 1934, while so employed, he met with death by drowning in Bayou Lafourche at about 5:30 in the afternoon.

His widow has instituted this suit seeking to recover compensation for herself and her five minor children, issue of her marriage with the decedent, claiming that her husband met his death while acting within the course and scope of his employment. The defense is that the decedent's day's work was done, and that he died on his way home in a means of transportation which he had selected for his own convenience. There were no witnesses to the accidental death of Pitre, but it seems to be conceded that he was drowned from a pirogue or canoe which he used in crossing Bayou Lafourche to reach his home, which was situated across that stream, from the barn at which he stored the implements used on the work in which the highway commission was engaged in that district.

The lower court awarded the plaintiff the full amount of compensation which she claimed, as well as the sum of $148 for burial and funeral expenses, and the defendant has appealed.

The seriously disputed point in the case is whether the making of a daily report which the decedent had to mail to the district maintenance headquarters at Napoleonville, and which report it was his custom and habit to make at home after leaving the barn, constituted part of his duties in connection with his daily employment.

The fact that the decedent used the method of transportation which he did in going to and from his work instead of going to Raceland to cross over the bridge at that place, and then returning to his home on the other side of Bayou Lafourche, is immaterial. It is not shown that the means he chose of crossing Bayou Lafourche in his pirogue subjected him to any greater hazards than traveling up and down both sides of the highway and crossing a bridge besides. It certainly was, for him, the shorter and more convenient way, and, as his employers did not furnish him transportation, it would seem to us that they should not question his discretion in selecting a method of his own that was reasonable and safe.

If, therefore, it has been established as a fact, that the deceased employee's duties, under his employment, included the making of this daily report, and that he met with death on his way to his home where he was going to make that report, as was his usual custom, we are firmly of the opinion that his widow has a just claim for compensation.

It is shown that the decedent had been working for the highway commission for quite a number of years, and that for the last six years he was foreman of his unit. Mr. J. C. Waties, district superintendent of district No. 2 in which the Raceland unit

operated, states positively that the decedent, as foreman of his unit, had to make a report each day as to the work he had done, the route he had gone on, and he also had to keep a gasoline record. Asked, "Was he required to do that by the Highway Commission—was that a part of his duties?" he answers: "Yes, sir, to make that report." This official states further that these employees were not assigned any particular time to make their reports and that the custom was for them to make them "when they got off." With particular reference to the decedent, he says that his duties were to get the equipment locked up, the gas tanks closed, attend to everything, and then "he was supposed to make that report." The foreman, he says, always had "a little more duties to perform than the others," and that the compensation he received included the making of these reports after his day's work.

Mrs. Pitre testifies that her husband had been making that report each day, for six years, "right after he got home." She assumes, of course, that he had not made the report on the day that he died for the reason that he drowned on his way home at the time he usually reached there from the barn. It is otherwise shown to be a fact, however, that Mr. Pitre had not made his daily report for that day.

Mr. Harris Melancon, the parish foreman, after stating that it was the decedent's duty to make a daily report and that there was no particular place assigned to him for making it, says that it was his custom, for the past six years, to make it at his home each day, after his day's work.

Mr. A. E. Hoffman, assistant superintendent of the district, testifies that it was part of the decedent's duty to make out that report, daily and that whilst there was no requirement as to the place where it should be made, "the rule was that he was to make it as soon as he got through his day's work." Most of the men, he says, would make them at home "because they kept their forms and records there."

Mr. Felix Savoie, a clerk of the maintenance district, to whom the reports were mailed, also states that it was the duty of Mr. Pitre to make that report daily and mail it in to the office. He says that he always sent them in "unless he was ill or something." He refers to some instances where there might have been some delay in his receiving them, but this he attributed to trouble with the mail connections.

This evidence, uncontradicted, can safely be said to have established the fact that the making of his daily report constituted part of the decedent's daily work and to show with sufficient certainty that, in the absence of any requirement as to the place where he was to make it, that he had for the past six years been accustomed to making it at his home on his return from the barn across Bayou Lafourche. Counsel for defendant would have the court disregard this part of the employee's duty in considering the widow's claim for compensation on account of it being of so trivial a nature. But simple as the report was, we are bound to be impressed with its importance and the necessity of it being made daily when considered in connection with the extent and the public character of the work which the Louisiana highway commission is engaged in. Counsel also argue that an employee might well wait until the following morning after the day's work to mail his report on his way to work for the succeeding day, in which event it might be said that his day's work lasted twenty-four hours. But the evidence shows that it was the intention, if not the requirement of the employer, that these reports be made after the employee had completed the other tasks of the day, and, as already stated, it is a fact that the decedent in this case had followed that course for the past six years.

In Myers v. Louisiana Railway & Navigation Co., 140 La. 937, 938, 74 So. 256, one of the early and leading Louisiana cases on the subject of compensation, the Supreme Court stated that it was impossible to formulate any standard verbal test for determining whether an injury has arisen out of the employment or not, and it is necessary that each case must be decided from its own facts. Here, we have a case in which the employee's duties, as part of his day's work, required that he make a daily report which had to be mailed to the headquarters of the district in which he worked. The employer neither furnished nor designated any particular place where he was to make such report, in the absence of which the employee, with the implied if not the direct consent of the employer, selected his own home as the place to make it. The employer, if it did not so require, intended that that report be made immediately following the employee's other daily tasks. On his way home, one afternoon, following his usual custom of performing his duty in this respect as he had for six years, the employee meets with an accidental

death. Clearly it seems to us that we have a case which meets the requirements of the compensation statute (Act No. 20 of 1914, as amended), in that the accidental death may be said to have arisen out of the employment, and we are therefore convinced of the correctness of the judgment appealed from.

Judgment affirmed.