SARTAIN, Judge.
This is a suit by Anthony N. Collette, Lessee, against Theodore B. Blanchard, Lessor, for wrongful eviction and the value of improvements placed on the leased premises. Blanchard appeals from an adverse judgment. We affirm.
The uncontested facts are: In February of 1972, Blanchard leased a two and one-half acre tract of land to one Ivy Bonaventure. The property then contained a block building which was used as a lounge. The lease granted the Lessee the right to construct a service station on the property provided that such improvements remained on the land and became the property of the Lessor upon the termination of the lease.
In May of 1972, Bonaventure sublet an unimproved portion of the property to plaintiff. This instrument contained a similar provision as to the ownership of any service station subsequently erected on the premises. Shortly thereafter, Collette constructed a service station on the leased property and conducted a business operation therefrom through a manager.
In December of 1972 and January of 1973, Blanchard instituted suits against Bonaventure seeking to cancel the primary lease on the basis of Bonaventure’s breach of the lease agreement. Collette intervened in both suits. The dispute between Bonaventure and Blanchard was apparently settled upon the execution of a Release of Lease, dated April 18, 1973, wherein the subject property and improvements were surrendered to Blanchard.
Under date of April 13, 1973, a letter agreement was signed by both parties, which agreement we quote in its entirety:
“This letter is intended to express the terms of an agreement reached this day between the parties concerning the service station known as I — 10 Texaco.
“We agree that A. N. Collette has built the station on property leased from Ted B. Blanchard and that the Department of Highways will build a new highway along the route of present Highway 415, and *724 that the parties do not know what effect this will have on the value of the station.
“It is agreed, however, that from this date until the date of the new highway taking the station, less the cafe, will be rented to A. N. Collette for $200.00 per month.
“As of the time of the taking, the parties agree that if the station is taken completely, then Collette will be entitled to recover the sum of $20,000.00 for the value of his improvements, to come from the award in any such suit.
“In the event the station is not taken by the highway, but is damaged, then Collette will have the option to continue to occupy the premises at a rental which will be reduced to reflect the then value of the premises or to share in the award of severance damages awarded by the court for said station in the proportion of % to Collette and 14 to Blanchard, provided that in this event Collette’s recovery shall not exceed $20,000.00.
“It is further agreed that after the filing of the new expropriation suit, then the parties will enter into a long term lease to reflect the agreements expressed in this letter agreement.
“It is understood that the tanks and pumps at the station belong to Texaco.
“It is further agreed that this agreement is conditioned upon Ivy Bonaventure executing a release of the lease between himself and Theodore B. Blanchard dated February 10, 1972 recorded in C.B. 117, entry 127.
Yours very truly,
/s/ Theodore B. Blanchard
Theodore B. Blanchard
“If the above correctly reflects our agreement, please signify by signing the duplicate original and return the same to me.
“Approved April 16, 1973.
/s/ A. N. Collette
A. N. Collette”
Collette sublet the leased property to Petroleum Transportation Company on February 4, 1974.
By letter dated July 9,1974, Collette was advised by Blanchard’s attorney that his lease was cancelled as of June 5,1974. The reason given was Collette’s “. . . leasing of the property as a truck terminal.” Enclosed with the notice of cancellation were Collette’s rent checks for the months of June and July of 1974. Blanchard thereafter leased the same property and improvements to Petroleum Transport.
The facts which are in dispute relate to the ownership of the improvements placed on the leased premises by Collette and the intention of the parties upon the signing of the letter agreement of April 13, 1973.
In his written reasons for judgment, the district judge held that the letter agreement of April 13, 1973, constituted a month to month lease between Blanchard and Col-lette, that Blanchard wrongfully evicted Collette from the leased premises and converted the same to his own use, that the purported sublease between Bonaventure and Collette was invalid because prior written consent from Blanchard was not obtained, and that under C.C. Art. 2726 Collette was entitled to judgment for the fair market value of his improvements.
Blanchard contends on appeal that the decision of the trial judge with respect to the ownership of the improvements is contrary to the written provisions of Collette’s sublease with Bonaventure; and alternatively, that in the event Collette is declared to be the owner of the improvements, he (Blanchard) elects to have Collette remove said improvements.
C.C. Art. 2726 provides:
“Art. 2726. The lessee has a right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it.
But if these additions be made with lime and cement, the lessor may retain them, on paying a fair price.”
However, notwithstanding the language in the above article, our courts have consistently enforced lease agreements providing that improvements placed on leased premises would become the property of the *725 landowner on the expiration or termination of the lease. Salem v. Haggart, 189 So.2d 283 (La.App. 3rd Cir. 1966).
The trial judge held that Article 2726 was applicable and that the reversionary clause was inapplicable on the premise that the sublease between Bonaventure and Collette was invalid because Bonaventure had not obtained Blanchard’s prior written consent. The judge a quo then further reasoned that in the absence of a valid reversionary clause, the option rested with Blanchard to retain the improvements under the authority of Art. 2726. The district judge further reasoned that Blanchard optioned to retain the improvements by not having given Col-lette notice to remove them before he (Blanchard) terminated the lease contrary to law and leased the property to Petroleum Transportation Company.
While we agree with the result reached by the district judge, we do so for different reasons.
The sublease between Bonaventure and Collette was a valid lease. Neither Collette nor Blanchard have urged its invalidity. Blanchard knew of the construction of the building. He voiced no complaint. Further, Collette can not be heard to reject the clear terms of his lease agreement, i. e., that the improvements placed on the land by him would remain thereon and become the property of the landowner at the termination of his sublease.
However, we do find that Blanchard has either waived or relinquished any reversion-ary rights he may have had to the improvements. The record reflects that a dispute arose as to Blanchard’s right to cancel the Bonaventure lease. Collette testified that the letter agreement of April 13, 1973, was the result of a compromise to end the Bonaventure litigation and to quiet the issue of ownership to the improvements. The record and the agreement support this assertion. The agreement itself is conditioned on Bonaventure’s surrender of the premises. It recognizes that Collette constructed the building and, more importantly, places the value of Collette’s interest at three-fourths of any sum received by Blanchard in an impending expropriation suit, not to exceed $20,000.00.
We now turn to the issue of payment for the improvements. Under Art. 2726, above, the lessee is privileged to remove any improvements placed on the leased premises by him. However, when these improvements are made “with lime and cement,” the option rests with the landowner to “retain them, on paying a fair price.”
Blanchard testified that he rejected the option afforded to him under the article by repeatedly telling Collette to remove the improvements. Collette, of course, denies that he did. The trial judge found that Blanchard had failed to prove this claim. The record amply supports the district judge in this determination.
As to compensation for the improvements, Blanchard argues that in the event it is determined that C.C. Art. 2726 is applicable, i. e., that Collette owns the improvements, that he (Blanchard) elects to have Collette remove them. He contends that inasmuch as the ownership thereto was in doubt, he should not be called upon to exercise the option the article grants him until the court determines whose property it is. We think this argument comes too late. Blanchard asserted ownership of the improvements up to the time this controversy was heard on the merits. He deprived Col-lette of the peaceful possession of the premises, arbitrarily declared the lease terminated, refunded two rent checks, and leased the property, with improvements, to a third party. Under these circumstances, the trial judge held that Blanchard is deemed to have elected to retain the improvements and owes Collette for their fair value. We also agree with this determination.
Evidence as to the value of the improvements was solicited through expert testimony of an appraiser offered by the plaintiff. It is the only evidence in the record with respect to value. The trial judge accepted this witness’s opinion that the market value of the improvements was $26,385.00. We also find his testimony to be reasonable and that this sum constitutes a “fair price” within the intent of C.C. Art. 2726.
*726 Accordingly, for the above reasons, the judgment of the district court is affirmed at appellant’s costs.
AFFIRMED.