399 So.2d 1276 (1981)
Patricia McCarthy, wife of Neal PENDLETON, Jacqulin Ann DeLaune, wife of Gerald DeLaune, Virginia Fremaux, wife of L. C. Soileau, III, Rose Mary Fremaux, wife of Robert Schlicher, Jr. and Edward C. Fremaux
v.
SHELL OIL COMPANY.
No. 11933.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1981.
*1277 Alonzo T. Stanga, III, Metairie, for plaintiffs-appellees.
Hulse, Nelson & Wanek, Craig R. Nelson, New Orleans, for defendant-appellant.
Before BOUTALL, BARRY and KLEES, JJ.
BARRY, Judge.
Defendant appeals from a judgment ordering its eviction resulting from an alleged breach of contractual obligations as a lessee.
This scenario began in 1954 when Luchester McCarthy purchased property in Jefferson Parish and subsequently filed a counter letter providing that Edna C. Neely was a co-owner[1]. In 1957 McCarthy leased the property to Shell Oil Company for fifteen years at $375.00 per month with a five year option at $600.00 monthly. Shell then constructed a service station and, in 1969, contacted McCarthy seeking an extension of the lease. On June 13, 1969 a new lease was negotiated to become effective August 1, 1969 at a rental of $600.00 per month and during the following four years Shell spent approximately $80,000.00 to renovate the property. In 1979 Shell demolished the service station and constructed a self-service facility; on adjacent land, previously leased from another owner in 1958, Shell built a four-bay service station in conjunction with its operation.
Plaintiffs filed a rule to evict Shell alleging that under terms of the 1957 lease they became owners of the service station when that lease was terminated in 1969 and demolition of their station constituted a breach of the lease. Shell filed dilatory and peremptory exceptions, the matter received a full hearing, and the district court orally stated that "... by a preponderance of the evidence the lease was in fact breached". Shell filed this appeal urging: that its dilatory exception to use of a summary proceeding for eviction was valid; that dismissal of its peremptory exception of non-joinder of an indispensable party, Shell's sub-lessee, was error; that the trial court erred in determining Shell breached its lease and in holding that plaintiffs had a right of reversion; that the trial court committed error on rulings concerning admissibility of evidence; and that Shell did not receive a fair trial because of the lower court's conduct during trial.
*1278 Ownership of the service station building at the time of its demolition should be determined first. Under the 1957 lease, Article 6, Shell had the right to and did construct an automobile service station at a cost of $25,000.00 and Article 14 of the lease provides in part:
"All buildings and improvements constructed, installed or placed on the premises by Shell, at any time during the term of this lease or any extension thereof or any tendency thereafter, shall become lessor's property at the termination of this lease or any tenancy thereafter."
It should be noted Article 14 was a specially typewritten clause used in lieu of a standard clause which provided that improvements on the leased property would be owned by the lessee at the end of the lease.
Again, in the 1969 lease the following standard language was stricken:
"All buildings, improvements, equipment, and other property constructed, installed or placed on the premises by Shell or acquired by Shell, at any time during the continuance of this or any previous lease or any tenancy thereafter; shall be and remain Shell's property, and Shell shall have the right to remove any or all of the same from the premises at any time during, and within sixty (60) days after any termination of this lease or any tenancy thereafter."
Had this provision remained a part of the 1969 lease, Shell could have reasonably argued that it retained ownership of the original service station and had the right to remove it during the term of the 1969 lease. However, the provision was lined out and initialed by the parties with the notation "see rider attached" which provides:
"All buildings and improvements constructed, installed or placed on the premises by Shell, at any time during the term of this lease or any extension thereof or any tenancy thereafter, shall become lessor's property at the termination of this lease or any tenancy thereafter. All equipment or other property installed or placed on the premises by Shell or acquired by Shell, at any time during the term of this or any previous lease or any extension thereof or any tenancy thereafter, shall be and remain Shell's property, and Shell shall have the right to remove any or all of the same from the premises, at any time during, and within sixty (60) days after any termination of, this lease or any tenancy thereafter."
This rider to the 1969 lease refers to "buildings and improvements" constructed during the term of the 1969 lease, and makes no reference to buildings constructed during the 1957 lease. We also note that the 1969 lease distinguishes between "buildings and improvements" and "equipment and other property", the former belonging to the lessors and the latter belonging to the lessee upon termination of the lease.
After the parties negotiated the new lease on June 13, 1969, for some reason they signed an agreement on July 30, 1969 to terminate the 1957 lease effective July 31, 1969, one day prior to commencement of the re-negotiated lease on August 1, 1969. The termination agreement provided that the parties:
"Agree that the lease dated June 19, 1957 ... shall be and is hereby terminated, effective as of July 31, 1969; and release each other from all claims which either now has against the other under or by virtue of the lease, as amended, supplemented or extended, reserving, however, to Shell its rights thereunder to remove its property from the premises...".
Shell argues that this provision released both parties from any cause of action and there is no basis for this lawsuit. However, when the termination agreement was executed in 1969 the service station building had not been demolished and this cause of action had not yet accrued. The last portion, providing for Shell to remove its property from the premises, refers to "equipment or other property". The provision "or any tenancy thereafter" is an alternative period to determine ownership of improvements, but is inapplicable if the lease is terminated.
*1279 Our courts have consistently enforced lease agreements providing that improvements placed on leased premises would become the property of the landowner on termination of the lease. Collette v. Blanchard, 348 So.2d 722 (La.App. 1st Cir. 1977); Salem v. Haggart, 189 So.2d 283 (La.App. 3rd Cir. 1966). Clearly, the 1957 lease provided and we conclude that any building constructed on the property during the lease became the lessors' property when the lease was terminated in 1969.
The lessors urge, in the alternative, that the second (1969) lease constituted a novation between the parties; however, since the original lease was effectively terminated by the parties in writing there is no reason to consider a novation.
The next question is whether demolition of lessors' building was sufficient to rescind the lease. Article 5 of the 1969 lease reads:
"USE OF PREMISES. Shell shall have the rights, at Shell's expense: to enter the premises, at any time after the date of this Lease, for the purpose of making investigations and surveys; to use the premises for any lawful purpose; to construct and install on the premises, and paint in colors of Shell's selection, an automobile service station, and any additional buildings, improvements and equipment (including advertising signs and billboards) that Shell may desire; and to make any alterations that Shell may desire in the premises and buildings, improvements and equipment at any time located thereon."
Plaintiffs maintain Article 5 only gives Shell the right to "construct and install on the premises ... an automobile service station... and to make any alterations that Shell may desire in the premises and the buildings ...", but to read "alteration of premises and buildings" to mean "destruction of premises and buildings" would be an unwarranted interpretation of the clause. Plaintiffs cite LSA-C.C. Articles 2710[2] and 2729[3] as authority that Shell had an affirmative duty to preserve and protect the lessors' building and land and to use the premises as a good administrator.
In its brief Shell argues it had the right "to do anything it desired with the building" and contends demolition of the building did not breach the lease because the building was in disrepair and worthless to plaintiffs; further, the improvements that replaced the building constituted a more valuable asset.[4]
We feel a lessee, as a prudent administrator, does not have the unrestrained right to determine unilaterally and without lessors' consent that a building on the leased premises should be demolished. Admittedly, the original service station was twenty years old, but in 1970 Shell spent $63,000 on improvements and during the following three years expended another $16,000. As a practical matter, it appears Shell wanted to expand this lucrative location[5] and did so by utilizing its adjacent lease. Nowhere does the lease give Shell the right "to do anything it desired" and demolition of the service station was to the detriment of these lessors and constituted a breach of the lease.
We are not concerned with lessors' "right of reversion" as stated by the lower court. The service station was not built or owned by lessors or their ancestors in title and it *1280 would be improper to say that this building would "revert" to lessors. Lessors' claim of ownership comes from mutual agreement that termination of the 1957 lease resulted in a transfer of title and is part of the original consideration which occurred during negotiation and execution of the 1957 lease.
In support of its peremptory exception of non-joinder of an indispensable party, its sub-lessee, Shell relies on C.C.P. Article 641 which provides:
"Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
No adjudication of an action can be made unless all indispensable parties are joined therein."
Shell had the unrestricted right to sub-lease without first obtaining permission from the lessors, and alleges that it did execute a sub-lease, but the lease is not part of the record. Plaintiffs were not aware Shell had sub-leased the property, and without privity of contract, a sub-lessee is not an indispensable party to an eviction proceeding. See Miles v. Kilgore, 191 So. 556 (La.App. 2nd Cir. 1939) at pp. 559:
"All persons are presumed to know the law. Whether they do in reality know it or not is immaterial as its effects are visited upon all alike. One who subleases property is held to know what the penalty will be if the lessee breaches his contract of lease by not paying his rent. The foundation giving way carries with it the superstructure. This being true, a sub-tenant is without just grounds of complaint when he is forced to give up property, the subject of his lease, through the failure of the lessee to discharge his obligations to the lessor. The sub-tenant's recourse, if aggrieved, is against his own lessor. Audubon Hotel Co. v. Braunning, 120 La. 1089, 46 So. 33, 124 Am.St.Rep. 456.
Strange as it may seem, there appears to be no precedent for our holding herein. We have searched diligently for one without success. The absence of a precedent construing laws so well known and so often resorted to, in the light of facts like or similar to those in this case, should argue forcefully in favor of the thought that there is near unanimity of opinion as regards the meaning and intendment of such laws.
We are clear in the opinion that the law governing ejectment proceedings by landlords does not contemplate nor require that sub-tenants shall be made parties thereto as a condition precedent to the right to eject them as a means of restoring full possession of the leased premises to the lessor. If this were not true, it is easy to conceive of a case, involving a large hotel or apartment house, wherein the lessor would be subjected to interminable delays and a multitude of law-suits before he could regain possession of his own property."
We hold there is no requirement for a lessor to join a sub-lessee in an eviction proceeding against the lessee where there is no privity between the lessor and sub-lessee. The trial court's dismissal of Shell's exception of non-joinder of an indispensable party was appropriate.
Shell strongly urges that it was improper for the trial court to allow the eviction rule to be heard in a summary manner. We disagree.
C.C.P. Article 2592(3) states:
"Summary proceedings may be used for trial or disposition of the following matters only:
(3) An issue which may be raised properly by an exception, contradictory motion, or rule to show cause."
C.C.P. Article 4731 provides:
"If the lessee or occupant fails to comply with the notice required to vacate required under this Title, the lessor or owner, or agent thereof, may cause the lessee or occupant to be cited summarily by a court of competent jurisdiction to *1281 show cause why he should not be ordered to deliver possession of the premises to the lessor or owner."
A case in point is Shell Oil Company v. Moore, 257 So.2d 177 (La.App. 4th Cir. 1972) wherein Judge (now Justice) Lemmon stated at p. 178:
"We conclude that Moore is in possession of the subject premises by virtue of a contract of lease and thereby occupies the status of a lessor or tenant. C.C. art 2677. When the lessee's right of occupancy has ceased because of the termination of the lease for any reason, the lessor is afforded the use of summary proceedings to obtain possession of the premises. See C.C.P. art. 4701 et seq. In these summary proceedings the lessor must prove that the lease was validly terminated, and the lessee may assert any available defenses.
It would be unreasonable to adopt the argument advanced in this case that Shell should first prove its right to terminate the agreement in an ordinary proceedings, for this would compel Shell to use ordinary proceedings to obtain entitlement to eviction by summary proceedings.
In this particular case Moore is not being deprived of any defenses, but is simply required to assert these defenses at an advanced trial date."
Shell further contends that summary eviction is not appropriate to try disputed title to property but is designed for situations where the possessor has no semblance of claim to title or possession. Foreman v. Luquette, 344 So.2d 1111 (La.App. 3rd Cir. 1977). There is no title dispute here and lessee's right to occupancy ceased when it demolished lessors' property. Our holding in Shell Oil Company v. Moore, supra, supports plaintiffs' use of summary proceedings under these facts.
Shell complains that hearsay evidence (a statement and a letter) was improperly admitted in this bench trial. This evidence, even if excluded, would not change the above determinations and is not reversible error.
We have reviewed the entire record in order to evaluate Shell's claim that it did not receive a fair trial. Verbal exchanges did occur between the trial judge and counsel, but we find no evidence to conclude or even indicate that the trial judge was biased or impartial.
Shell strenuously complains that an adverse judgment would cause total abandonment of its $281,000.00 investment, including the "new" service station on the adjacent property, and that it could not have utilized this property any differently from a marketing standpoint. Both points may be financially valid as a practical matter, but have no foundation to circumvent the legal and factual determinations expressed above.
Accordingly, the judgment of the District Court is affirmed, appellant to pay all costs of these proceedings.
AFFIRMED.
NOTES
[1] The present owners/lessors/plaintiffs/appellees are heirs of the original co-owners.
[2] C.C. Article 2710. "The lessee is bound: 1. To enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease. 2. To pay the rent at the terms agreed on."
[3] C.C. Article 2729. "The neglect of the lessor or lessee to fulfill his engagements, may also give cause for a dissolution of the lease, in the manner expressed concerning contracts in general, except that the judge can not order any delay of the dissolution."
[4] Shell claims it spent $157,000 for new construction on plaintiffs' property. Assuming the amount is correct, the breakdown shows $48,000 for land improvements, $6,000 for a cashier's booth, a $29,000 canopy, and the balance of $74,000 in equipment and fixtures which could qualify for removal at any time.
[5] This property forms one corner of Veterans Memorial Boulevard and Causeway Boulevard, one of the busiest intersections in Jefferson Parish.