762 So.2d 709 (2000)
Doris ALLAIN, et al.
v.
SHELL WESTERN E & P, INC., et al.
No. 99 CA 0403.
Court of Appeal of Louisiana, First Circuit.
May 12, 2000.
*710 William C. Dupont, Joseph B. Dupont, Jr., Plaquemine, for Plaintiffs-Appellees Doris Allain, et al.
John M. Wilson, Cheryl M. Kornick, Jana L. Grauberger, Mark B. Meyers, New Orleans, for Defendant-Appellant Shell Western E & P, Inc.
BEFORE: CARTER and PETTIGREW, JJ., and CLAIBORNE,[1] J. Pro Tem.
PETTIGREW, J.
The primary issue presented by this appeal is whether the plaintiff-owners of a minority interest in undivided leased property have standing to enforce a provision set forth in their ancestor's lease contract with defendant-lessee. Following the trial court's grant of plaintffs' motion for partial summary judgment, defendant-lessee now appeals.

FACTS
Prior to 1970, Baist Cooperage & Lumber Company, Inc. ("Baist") owned certain undeveloped property in Iberville Parish, Louisiana. On or about September 5, 1950, Baist entered into an oil, gas and mineral lease ("the Baist lease") with Shell Oil Company ("Shell"), predecessor-in-interest to defendant, Shell Western E & P, Inc. ("Shell Western"), covering property owned by Baist, and described therein as "[a]ll of Sections Nine (9), Ten (10), Twelve (12) and Thirteen (13) in Township Ten (10) South, Range Eleven (11) East, Southwestern Land District." Said property ("the Baist property") comprised a portion of the Bayou Sorrel Field, Iberville Parish, Louisiana.
Following execution of the Baist lease, Shell, during the 1950s, commenced oil and gas operations in the Bayou Sorrel Field. Said operations included the use of surface structures, pipe and pipelines across the Baist property. The aforementioned lease between Baist and Shell contained a provision in paragraph 10 that "[w]hen requested by Lessor, Lessee shall bury its pipe lines below plow depth."
In 1970, Baist was dissolved; and its assets, including the land covered by the Baist lease, were distributed among Baist's shareholders who now own the Baist property in indivision. The Baist property has been continuously leased by Shell or its successors-in-interest since execution of the lease.
On or about March 29, 1983, Joseph B. Dupont, Sr., one of the owners of the undivided Baist property, sent correspondence to Shell's office in Houston, Texas, complaining of the condition of the property and invoking the lease provision mandating that Shell bury its pipelines below plow depth. Joseph Dupont further stated that he expected burial operations to commence within sixty (60) days. Evidently, receiving no reply, Joseph Dupont sent a follow-up letter, via certified mail, to Shell's office in New Orleans, Louisiana, again complaining of the condition of the Baist property and asserting that Shell's actions had violated the provisions of its *711 lease. Joseph Dupont wrote to Shell's New Orleans' office again on April 7, 1986, and enclosed copies of his two previous letters. On June 30, 1986, Joseph Dupont wrote a similar letter to Shell Western (at the same address in New Orleans)[2] stating that "if this mess is not cleaned up immediately with no pipe visible," he would be compelled to file suit against Shell.
The instant suit was ultimately filed in Iberville parish by William C. Dupont on behalf of Doris Allain and several other similarly situated owners of the Baist property (collectively, "plaintiffs") against Shell Western and several individuals (collectively, "defendants") on October 6, 1992.

ACTION OF THE TRIAL COURT
On November 30, 1995, during the pendency of this litigation, Shell Western purportedly sold its interest in the Baist property to Panaco, Inc ("Panaco"). Shell Western further assigned to Panaco its interest in the Bayou Sorrel Field.
On August 4, 1998, plaintiffs filed a motion seeking a partial summary judgment on their first cause of action, i.e., to have defendants either bury or remove its pipes from plaintiffs' property. Defendants responded by filing an opposition memorandum and later, a supplemental opposition memorandum, arguing that summary judgment was inappropriate. Defendants further filed peremptory exceptions raising objections of no right of action and failure to join an indispensable party. According to defendants, any acts of management affecting co-owned property must be made pursuant to the unanimous consent of all co-owners. Defendants further allege that Panaco, Inc. (believed to be the present owner of Shell Western's lease interest in the Baist property[3]) is an indispensable party that must be brought into this litigation.
Following oral arguments by the parties, the trial court took the matter under advisement. Upon review of the parties' memoranda, exhibits submitted and applicable law, the trial court, on October 7, 1998, granted plaintiffs' motion for partial summary judgment "to enforce the provision of the lease that mandates burial of the pipes and pipelines subject to the `Baist Lease'" between Baist and Shell. The trial court further stated that it adopted "as its own Reasons For Judgment the findings of fact and law contained in the Plaintiffs' Memorandum In Support Of Motion For Partial Summary Judgment and Plaintiffs' Supplemental Memorandum In Support Of Partial Summary Judgment."[4]
From this judgment, defendants now appeal.

ISSUES PRESENTED FOR REVIEW
In connection with their appeal, defendants set forth the following issues for review by this court.
1. Whether the [trial] court may grant summary judgment ordering the defendants to bury pipelines no longer owned by the defendants, without joining the present owner of the pipelines as an indispensable party to the litigation?
2. Whether a small minority of co-owners of the lessor's interest in and [sic] oil and gas lease may unilaterally make management decisions which affect the entirety of the property owned in indivision, in violation of La. Civ.Code art. 801?

*712 3. Whether a court may grant summary judgment based on a clause in a 50-year old lease when that clause has no meaning as applied to the leased property, and when applying that clause as written would lead to absurd consequences?
4. Whether intervening governmental regulations which may make performance impossible can excuse performance of part of a contract?
5. Whether the record on appeal is adequate to support the [trial] court's judgment?

DISCUSSION

Joinder of indispensable party
In their brief to this court, defendants assert that the present owner of the lease (which Shell believes to be Panaco, Inc.) is an indispensable party to this action and should have been joined as a defendant prior to consideration of plaintiffs' motion for partial summary judgment. Defendants correctly note that La.Code Civ. P. art. 641 sets forth the standard for determining when a party must be joined for the just adjudication of an action:
Art. 641. Joinder of parties needed for just adjudication
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the matter in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
Defendants argue that because the trial court's judgment directly affects the pipelines now believed to be owned by Panaco, Panaco, or its successor should also be joined as an indispensable party to this litigation due to the effect a judgment will have on its pipeline and the present operations under the lease.
Plaintiffs respond by arguing that they "have never consented to any assignment or transfer of obligations of the original [lease] contract and have no contractual relations with any other ... party regarding the property in question." In their brief to this court, plaintiffs quote at length from the contract and agreement between Shell Western and Panaco and allege that said contract "is more than a mere indemnity" agreement.
Plaintiffs point out that the agreement specifically provides that should Panaco be joined as a party to this litigation, Shell Western's attorney would continue to represent all defendants. Additionally, Shell Western would make all decisions regarding the litigated claims and Shell Western, in addition to indemnifying Panaco, Inc., would have the option to conduct pipeline burial operations itself and remove unused or abandoned pipelines.
In resolving this issue, this court agrees with the reasoning utilized by the fourth circuit in its decision in Pendleton v. Shell Oil Company, 399 So.2d 1276 (La. App. 4 Cir.1981), reversed on other grounds, 408 So.2d 1341 (La.1982). While mindful that the instant matter is not an eviction proceeding, this court nevertheless finds the fourth circuit's analysis in Pendleton dispositive of the issues presented in this case. In Pendleton, the court noted:
Shell had the unrestricted right to sub-lease without first obtaining permission from the lessors, and alleges that it did execute a sub-lease, but the lease is not part of the record. Plaintiffs were not aware Shell had sub-leased the property, and without privity of contract, a sub-lessee is not an indispensable party to an eviction proceeding. See Miles v. *713 Kilgore, 191 So. 556 (La.App. 2nd Cir. 1939) at pp. 559:
"All persons are presumed to know the law. Whether they do in reality know it or not is immaterial as its effects are visited upon all alike. One who subleases property is held to know what the penalty will be if the lessee breaches his contract of lease by not paying his rent. The foundation giving way carries with it the superstructure. This being true, a sub-tenant is without just grounds of complaint when he is forced to give up property, the subject of his lease, through the failure of the lessee to discharge his obligations to the lessor. The sub-tenant's recourse, if aggrieved, is against his own lessor. Audubon Hotel Co. v. Braunning [Braunnig], 120 La. 1089, 46 So. 33, 124 Am.St.Rep. 456.
Strange as it may seem, there appears to be no precedent for our holding herein. We have searched diligently for one without success. The absence of a precedent construing laws so well known and so often resorted to, in the light of facts like or similar to those in this case, should argue forcefully in favor of the thought that there is near unanimity of opinion as regards the meaning and intendment of such laws.
We are clear in the opinion that the law governing ejectment proceedings by landlords does not contemplate nor require that sub-tenants shall be made parties thereto as a condition precedent to the right to eject them as a means of restoring full possession of the leased premises to the lessor. If this were not true, it is easy to conceive of a case, involving a large hotel or apartment house, wherein the lessor would be subjected to interminable delays and a multitude of law-suits before he could regain possession of his own property."
We hold there is no requirement for a lessor to join a sub-lessee in an eviction proceeding against the lessee where there is no privity between the lessor and sub-lessee. The trial court's dismissal of Shell's exception of non-joinder of an indispensable party was appropriate.
Pendleton, 399 So.2d at 1280.
It is the opinion of this court that the non-privity rule in eviction proceedings can be similarly applied to the facts of the instant case. Here, Panaco acquired its rights to the Baist property during the pendency, and with full knowledge, of the instant litigation. Additionally, Panaco specifically acknowledged through its purchase and sale agreement that said litigation "may affect operations on the property depending upon the outcome thereof, including operations pertaining to the burial of existing and future flowlines, release of non-producing acreage, pre-depletion abandonment of non-producing facilities, site restoration, environment remediation, and salt water injection."
To require plaintiffs to join all of defendants' successors-in-interest despite a lack of privity would be an onerous and potentially ceaseless burden, and one that would operate to deprive plaintiffs of a speedy resolution of the issues affecting their property. Accordingly, we find this issue to be without merit.

Applicability of "plow depth" provision to lease of Baist property
A second issue raised by defendants is whether it was proper for the trial court to grant summary judgment based on a clause in a 50-year old lease that has no meaning as applied to the leased property, and when applying that clause as written would lead to absurd consequences.
Defendants assert in brief that "[i]t is undisputed that the [Baist] property ... is in a swamp environment subject to annual flooding." Relying upon the affidavit of Dr. Ronald H. Kilgen, a wetlands ecologist, defendants further assert that it would be *714 impossible to "plow" in this environment using conventional agricultural methods. Therefore, defendants claim that the lease reference to "plow depth" has no meaning in such an environment.
Defendants also rely on the affidavit of Professor Thomas A. Harrell, an expert in mineral law, to establish that
[O]ver the course of years ... the oil and gas industry developed standard forms of clauses ... [and that] [f]or the sake of consistency and ease of preparation, many times standard clauses are included in a form lease, even though [said] clauses can have no application in a particular terrain or under particular geographic conditions.
Professor Harrell further declares that based upon his experience and understanding, "[t]he provision requiring the burial of pipelines below plow depth ... has no application in an area where agricultural use is impossible."
Plaintiffs respond with the observation that the language of the lease provision is clear and unambiguous, and further point out that the lease reference to "plow depth" is a recognized unit of measurement in the oil and gas industry. In support of this position, plaintiffs offer the affidavit of John E. Caldwell, Jr., District Manager of the Louisiana Department of Natural Resources, Office of Conservation, whose authority extends over the Baist property. Mr. Caldwell declared that the term "plow depth" is a commonly known unit of measurement equivalent to one foot below ground level.
This court agrees with Professor Harrell to the extent that lease provisions regarding crop damage have no application where the land leased is not under cultivation. However, this court also notes that the pipeline burial provision at issue in the instant lease is apparently unrestricted in its application.
It is clear that a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. La. Civ.Code art. 2045; Hampton v. Hampton, Inc., 97-1779, p. 5 (La.App. 1 Cir. 6/29/98), 713 So.2d 1185, 1189. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ.Code art. 2046.
In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. La. Civ. Code art. 1848; Hampton, 97-1779 at 6, 713 So.2d at 1189. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law. The use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. Id.
Considering the foregoing, we cannot say that the reference in the lease to "plow depth" has no meaning as applied to the leased property. It is clear that "plow depth" as used in the contract is a unit of measurement. Additionally, we cannot say that application of said term as written would lead to absurd consequences barring evidence as to the impossibility of burying the pipelines on the Baist property at a depth greater than one foot below the surface. Furthermore, the financial costs associated with said burial is immaterial to a discussion of whether it is feasible to bury the pipelines. The parties are legally bound by the terms of their contract.

Intervening government regulations
Another issue raised by defendants is whether intervening governmental regulations which may make performance impossible can excuse performance of part of a contract.
Defendants assert that subsequent government wetlands regulations enacted after *715 the execution of the lease are fortuitous events that render performance under the lease impossible, Relying again on the affidavit of their expert, Dr. Kilgen, defendants claim that due to stringent regulation of wetland environments by the federal government, regulatory approval from the United States Army Corps of Engineers and other agencies would be required for burial of the pipelines in the Bayou Sorrel Field. Defendants further claim a question of fact exists as to whether defendants would be permitted to excavate the field and bury the pipelines, and that for this reason, the district court erred in granting plaintiffs' partial motion for summary judgment.
Plaintiffs respond by pointing out that defendants have failed to establish that a request has been made to a regulatory agency, or that any such request has previously been denied. Plaintiffs further point out that defendants have failed to cite any government regulation that would prohibit defendants from complying with the burial provisions contained in the lease contract.
Defendants appear to imply that burial of the pipelines will be automatically precluded merely because the federal government now regulates wetland environments. Although defendants' expert, Dr. Kilgen, has stated in his affidavit that regulatory approval for burial of the pipelines would be required, and further expresses doubt as to whether such approvals could be obtained, there is no evidence in the record to show that defendants will be prohibited from complying with the burial provisions contained in the lease contract due to government regulations. This assignment of error is also without merit.

Enforcement of lease provision by co-owner/ Adequacy of appellate record
This matter comes to us by means of summary judgment. We are mindful that a motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. P. art. 966 B. This article was amended in 1996 to provide that summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action."[5] La.Code Civ. P. art. 966 A(2).
The burden of proof on a motion for summary judgment is set forth in La.Code Civ. P. art. 966 C(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The initial burden of proof remains with the mover and is not shifted to the *716 non-moving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the non-moving party "submit evidence showing the existence of specific facts establishing a genuine issue of material fact." See Scott v. McDaniel, 96-1509, p. 5 (La.App. 1 Cir.5/9/97), 694 So.2d 1189, 1191-1192, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991. If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. Code Civ. P. arts. 966 and 967.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders, 96-1751 at 7, 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
After a thorough review of the record and the evidence before us, it is the opinion of this court that the primary issue presented by the instant case is whether a small minority of landowners may unilaterally enforce a provision contained in an oil and gas lease affecting property owned in indivision with others. This appears to be a matter of first impression.
In their briefs to this court, both defendants and plaintiffs cite codal provisions relating to co-ownership. Defendants claim that enforcement of this provision would affect the use and management of the property held in indivision, and would require the agreement of all the co-owners pursuant to La. Civ.Code art. 801. Conversely, plaintiffs assert that they are attempting to enforce the provisions of a contract already in existence for the purpose of cleaning up their property. Plaintiffs claim that since they are attempting to preserve the integrity of their property, the concurrence of other co-owners is not required under La. Civ.Code art. 800.
Ownership of the same thing by two or more persons is ownership in indivision. La. Civ.Code art. 797. Two or more persons may own the same thing in indivision, each having an undivided share. La. Civ. Code art. 480. Accordingly, the consent of all the co-owners is required for the lease, alienation, or encumbrance of the entire thing held in indivision, or the establishment of a predial servitude thereon. La. Civ.Code arts. 714 and 805.
While a co-owner may, without the concurrence of any other co-owner, take necessary steps for the preservation of the thing held in indivision, the use and management of the thing is determined by agreement of all the co-owners. La. Civ. Code arts. 800 and 801. Except as otherwise provided in Article 801, a co-owner is entitled to use the undivided thing according to its destination, but he cannot prevent another co-owner from making such use of it. As against third persons however, a co-owner has the right to use and enjoy the thing as if he were the sole owner. La. Civ.Code art. 802.
It is clear that when it entered into a mineral lease with Shell in 1950, Baist, in its capacity as the exclusive owner of the property, consented to a change in the destination of the property. The standard form oil, gas and mineral lease at issue herein specifically provides that "[w]hen requested by Lessor, Lessee shall bury its pipe lines below plow depth." Clearly plaintiffs, in their capacity as successors-in-interest of Baist, have authority to enforce this provision as to their respective undivided interests. Further, based upon the above-cited codal provisions, the concurrence of co-owners is not required where the enforcement of the lease provision does not change the use for which the undivided property has been designated, but merely preserves the property. Thus, the question becomes whether the burial of *717 the pipelines constitutes an act of preservation or an act of management.
After conducting a de novo review of the evidence before us, we note that there is no evidence in the record detailing the nature and extent of the work necessary to bury the pipelines at issue, or the impact such work would have on the Baist property. If, for example, burial of the pipelines could be accomplished without permanent, irreparable damage to the property, the use of the property could potentially be opened up for more diverse and coextensive use; i.e., leases for hunting, trapping or aquiculture. Under this scenario, it could be said that burial of the pipelines would be akin to an act of preservation that could be authorized by a single co-owner pursuant to the provisions of the Civil Code. If, on the other hand, it could be shown that burial of the pipelines would result in permanent damage to, or destruction of the land, then said action, if still desired, would constitute a substantial alteration of the property and require the consent of all of the co-owners.
Because the record is devoid of evidence detailing the nature and extent of the work necessary to bury the pipelines, and the effects such an operation would have on the use of the property, we are precluded from determining whether a minority of co-owners may enforce said provision without the consent of their co-owners. We therefore find that there are still material issues of fact in dispute as to the nature and extent of the work required to bury the pipelines, whether this burial of the pipeline would open the property up for more diverse and coextensive use, or whether said burial would destroy the usefulness of the property. In other words, there are still material issues of fact in dispute as to whether burial of the pipelines can be considered an act of preservation or an act of management. Accordingly, we reverse the trial court's granting of partial summary judgment in favor of plaintiffs, and remand this matter to the trial court for a determination as to whether burial of the pipelines constitutes an act of preservation or an act of management.

CONCLUSION
For the reasons set forth above, we reverse the trial court's granting of partial summary judgment in favor of plaintiffs, and remand this matter to the trial court for a determination as to whether burial of the pipelines constitutes an act of preservation or an act of management. All costs of this appeal shall be assessed equally against plaintiffs and defendants.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Plaintiffs allege in paragraph 5 of their petition, "That on or about January 1, 1984, all interest in said lease was transferred from Shell Oil Company to defendant Shell Western E & P Inc., a wholly owned Shell Oil Company subsidiary."
[3] Defendants assert in their brief to this court that, "Shell has no firsthand knowledge of whether Panaco has retained its ownership or has re-conveyed its interest to another entity."
[4] Plaintiffs' Memorandum In Support Of Motion For Partial Summary Judgment and Plaintiffs' Supplemental Memorandum In Support Of Partial Summary Judgment are not found within the record on appeal.
[5] Prior to the 1996 amendments of Article 966, the jurisprudence held that summary procedure should be used cautiously and sparingly, and that any reasonable doubt should be resolved against mover and in favor of a trial on the merits. See Autin v. United Diesel, Inc., 95-1886, pp. 3-4 (La.App. 1 Cir. 4/30/96), 673 So.2d 316, 318. In Pitre v. GAF Corporation, 97-1024, pp. 7-8 (La.App. 1 Cir. 12/29/97), 705 So.2d 1149, 1152-1153, writ denied, 98-723 (La.11/19/99), 749 So.2d 666, this court noted that these statutory amendments were procedural in nature and should be applied retroactively.