UWEIMER, Judge.
This matter is before the court following the granting of a motion for summary judgment in favor of defendant/employer, AMS Tube Corporation. The workers’ compensation judge found that defendant had fully and completely satisfied its obligation to furnish indemnity and/or medical benefits to its employee, Troy L. Davis, Jr., as of September 10, 1998, the day Mr. Davis was rear-ended in a vehicular accident.
Mr. Davis appealed the judgment listing two assignments of error. The first assignment of error states the court should have denied defendant’s motion for summary judgment. The second assignment of error indicates the court should have granted plaintiffs motion for summary judgment.
For the following reasons, we reverse.
FACTS
Mr. Davis was employed by AMS Tube Corporation in May 1997 as a quality assurance manager. He held that position for approximately a week before being named plant manager at the facility in Hammond, Louisiana. Relative to his job responsibilities, Mr. Davis related that he “did everything that needed to be done.” As part of his employment duties, he ran errands including going to the post office daily. In running errands, he would sometimes use a company truck if available. Otherwise, he would use his own vehicle. He did not punch a clock. He described his hours as “dawn to dark,” estimating that he would arrive at work by 6:30 a.m. and would leave about 6:00 or 6:30 p.m. He was a salaried employee.
It is undisputed that Mr. Davis sustained a work-related injury on June 2, 1998, requiring a cervical fusion. The surgery was performed on August 3, 1998, and provided immediate relief from the pain he had experienced between the injury and the surgery. He returned to work on August 20, 1998, pain-free except for pain from the surgical procedure. Thereafter, Mr. Davis wore a cervical collar, experienced some limited mobility and was somewhat restricted in his ability to climb, bend, and lift.
| ¡¡His recovery from the surgery was initially progressing as expected; however, his treating neurosurgeon, Dr. Edward Thomas Collum, III, noted on the August 26 visit that one or both bottom screws were backing out of the plate that had been inserted during the surgery. It appeared the locking screw had failed or pulled out. Additionally, it was noted that the graft at C6-7 had possibly collapsed. Dr. Collum noted that if the screws continued to back out or if further x-rays showed additional deterioration, Mr. Davis might require another surgery. He prescribed a Miami-J collar for Mr. Davis.
On September 9, 1998, the day before the vehicular accident, Dr. Collum indicated the x-rays showed both screws had backed out and the locking screw was sitting on top of one of the screws. The films showed a definite compression of the inferior graft. Although there was some evidence of failure of the fusion, Dr. Collum decided to continue conservative treatment in hope that calcium would build up around the location of the screws. He noted that Mr. Davis had been wearing his cervical collar at all times while awake. There is nothing in the record to indicate that Mr. Davis was discharged following this visit. In fact, there is sufficient evidence in the record to indicate Mr. Davis had not completely healed following the August 3, 1998 surgery. Dr. Collum noted he planned to see Mr. Davis again at the beginning of October.
*468 On September 10, 1998, Mr. Davis left the worksite to go to Wal-Mart to purchase film to photograph inventory at the plant. It was common for him to go to Wal-Mart a couple of times a week for supplies. He left between 11:00-11:15 and went straight to Wal-Mart. After leaving Wal-Mart, he stopped at his residence, a camper trailer located at the Pumpkin Park Campground, to procure lunch-time-sustenance in the form of a sandwich. Mr. Davis had no set lunch break. Sometimes he went home; sometimes he worked through lunch. He was traveling on Old Baton Rouge Highway returning to work when he was rear-ended in a vehicular accident. He was taken to the emergency room following the accident, but released. Following release from the hospital, he returned to work until approximately 5:00 p.m.
|4Mr. Davis was continually treated by Dr. Collum following the first cervical fusion which was done in August 1998. After the vehicular accident, Dr. Collum decided that Mr. Davis needed a second surgery because the bonding was not taking place and there was a collapse of the fusion. A second surgery was performed on November 5, 1998. Results following the second surgery were not as good as the first surgery. Following the second surgery, Mr. Davis had significant pain which had been absent after the first surgery. Mr. Davis remained off from work until January 2, 1999. He returned at that time and continued to perform his job until he was terminated on March 24, 1999.
The employer filed a motion for summary judgment seeking a determination that following the accident of September 10, 1998, benefits were no longer due for the June 2, 1998 accident. It is the employer’s position that the September 1998 vehicular accident is an intervening cause of Mr. Davis’ medical problems and that at the time of the accident he was not within the course and scope of his employment.
DISCUSSION
This matter comes to us by means of summary judgment. We are mindful that a motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Allain v. Shell Western E & P, Inc., 99-0403, p. 10 (La.App. 1 Cir. 5/12/00), 762 So.2d 709, 715; Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (10/31/97), 703 So.2d 29.
In determining whether summary judgment is appropriate, appellate courts are to review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993). Review of summary judgments in workers’ compensation cases is conducted in the same manner. See Pitts v. Helmrich & Payne Drilling, 98-1345, p. 3 (La.App. 1 Cir. 6/25/99), 739 So.2d 335, 337, writ denied, 99-2194 (11/5/99), 750 So.2d 187. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be viewed only in light of the substantive law | ¡^applicable to the case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528; Allain, 99-0403 at 11, 762 So.2d at 716.
A personal injury is compensable under the Workers’ Compensation Act only if it results from an accident “arising out of and in the course of employment.” LSA-R.S. 23:1031; Pitts, 98-1345 at 3, 739 So.2d at 337. In order to recover workers’ compensation benefits, a claimant must *469 prove that a work-related accident occurred. LSA-R.S. 23:1031; Middleton v. International Maintenance, 95-0238, p. 5 (La.App. 1 Cir. 10/6/95), 671 So.2d 420, 423-424, writ denied, 95-2682 (1/12/96), 667 So.2d 523. In addition, the claimant must establish the accident caused the injury and the injury caused the disability. Kennedy v. Johnny F. Smith Trucking, 94-0618, p. 6 (La.App. 1 Cir. 3/3/95), 652 So.2d 526, 530. An employee in a workers’ compensation action has the burden to establish a causal link between the work-related accident and the subsequent disabling condition. Causal 'connection between the disability and the accident must be established by a preponderance of the evidence. Kennedy, 94-0618 at 7, 652 So.2d at 530.
The facts of this case indicate that Mr. Davis, a plant manager for AMS Tube Corporation, sustained an injury on the job on June 2, 1998. The occurrence of the initial injury is not in dispute. As a result of this injury, Mr. Davis underwent a two-level cervical fusion on August 3, 1998. He returned to work August 20, 1998.
On September 10, 1998, Mr. Davis left the job site at approximately 11:00 a.m. to go to Wal-Mart to purchase film to photograph inventory at his place of employment. After purchasing the film, he went home to eat lunch. On his way back to the job, Mr. Davis was involved in a vehicular accident when the vehicle he was driving was violently rear-ended. During November 1998, Mr. Davis was required to undergo a second surgical procedure as a result of the failure of the original cervical fusion. Unlike the results of the first surgery, the second surgery did not leave him pain-free.
A motion for summary judgment is properly granted if there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. LSA-C.C.P. |sart. 966(B). Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish those ends. LSA-C.C.P. art. 966(A)(2).
The burden of proof remains with the mover. However, if the mover will not bear the burden of proof at trial on the matter, the mover is not required to negate all essential elements of the adverse party’s claim, but rather to point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim. If the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2).
Initially, we note the judgment forming the basis of this appeal is silent as to plaintiffs motion for summary judgment. Review of the record before this court indicates plaintiff did not file a motion for summary judgment. The sole reference to a motion for summary judgment on behalf of plaintiff appears in the memorandum filed by plaintiff entitled: “PLAINTIFF’S OPPOSITION TO DEFENDANT’S MOTION FOR SUMMARY JUDGMENT, in the alternative, PLAINTIFF’S MOTION FOR SUMMARY JUDGMENT.” Plaintiff did not file a motion requiring consideration by the lower court.
Defendant filed a motion for summary judgment and attached as exhibits the “Third Amended Disputed Claim for Compensation,” plaintiffs deposition, and the deposition of Dr. Collum, plaintiffs treating physician. Attached as exhibits to Dr. Collum’s deposition were copies of plaintiffs medical records. Defendant’s motion for summary judgment was scheduled for hearing on March 16, 1999; however, ac *470 cording to the judgment, the matter was submitted on briefs and the entire record.
The apparent basis of the decision of the workers’ compensation judge was that Mr. Davis had reached maximum medical cure at the time of the vehicular accident. However, if the vehicular accident was within the course and scope of employment, this determination is irrelevant because the employer would be responsible for the injuries inflicted in the vehicular accident.
j7Mr. Davis was a plant manager, a salaried employee always subject to recall with no set lunch hour. There is no evidence in the record as to how far Wal-Mart is from the job site. Nor is there any evidence as to the location of Mr. Davis’ residence at the Pumpkin Park Campground vis a vis Wal-Mart and the job site.
Ordinarily, an employee who leaves his employer’s premises and takes his noon hour meal at home or some other place of his own choosing is outside the course of his employment from the time he leaves the work premises until he returns. In the absence of a further showing it is assumed that the nature of his employment has not affected his personal eating practices, and the mere fact that he expects to return to his job at the end of the lunch hour is not enough to warrant the inclusion of this period within the course of his employment.
13 H. ALSTON JOHNSON III, LOUISIANA CIVIL LAW TREATISE: WORKERS’ COMPENSATION LAW AND PRACTICE [MALONE & JOHNSON] § 163 at 343 (3rd ed. 1994).
However, if the employee is permitted to eat on the employer’s time and the employee’s eating habits are dictated by the nature of his work, the employee has been found to be in the course of his employment. Clark v. Employers Liability Assur. Corporation, 27 So.2d 464, 466 (La.App. 1 Cir.1946), cited by JOHNSON, § 163 at 345. When “the employee is charged with some duty to perform during the lunch hour, it is fair to regard an injury received during this period as com-pensable.” See JOHNSON, § 163 at 346, citing Pitre v. Louisiana Highway Commission, 161 So. 894 (La.App. 1 Cir.1935) for a comparison.
Furthermore, although Mr. Davis may have deviated from his work-related film-buying mission by stopping to eat, there is no evidence to establish the deviation was anything but brief in time and slight in geographical terms. A deviation may be ignored if it is insubstantial. See JOHNSON, § 174 at 405, quoting Larson, Workmen’s Compensation (Desk Ed. 1977), § 19.60, which noted “human beings do not run on tracks like trolley cars.” See also Clark, 27 So.2d at 466, which involved an employee who left work momentarily to procure a meal at a café so he could work late as a mechanic. He was injured en route to the café. He was allowed a brief meal break while still on the clock and planned to return to work. The court stated:
When he left the repair shop with his work unfinished in order to get a meal necessary for carrying on his work up into the night, plaintiff lswas doing something in furtherance of his job and his employer’s business. Under the arrangement which he had with his employer, he had a right to temporarily lay aside his working tools and repair and obtain a meal for his physical sustenance in order that he might continue his work on his return with the better results for his employer. He was, therefore, at a place and on a mission at the time of the accident where he might reasonably be expected.
Clark, 27 So.2d at 466.
In this matter, the evidence establishes Mr. Davis was on an employment mission *471 to procure film when he left his job site. Thus, this matter does not involve an employee merely returning to work following a lunch break. Even if his deviation for lunch took him out of the course of his employment, the evidence is clear he was returning to work with the film at the time of the accident and thus had turned his attention back to his employer’s business and had re-entered the employment route.[2] It is clear that this injury occurred upon re-entry into employment when the deviation for lunch was completed.[3]
As noted in JOHNSON, § 174 at 407, “[I]t appears that in those cases in which it is clear that ‘re-entry’ has occurred at the time of the injury, compensation has been uniformly allowed.”
In summary, the evidence is insufficient to justify granting a motion for summary judgment in favor of the employer. There remain genuine issues of material fact as to whether the employee’s deviation was sufficiently substantial in terms of time and distance to justify' a finding that the employee was outside the course and scope of his employment. Furthermore, even if there was a deviation, the evidence is clear the employee had ended his deviation and turned his attention back to his employer’s 1 abusiness. If the vehicular accident occurred in the course and scope of employment, the issue of whether the employee made a full and complete recovery from the initial injury and surgery is irrelevant.
CONCLUSION
The judgment of the.workers’ compensation court is reversed, and the matter is remanded for further proceedings consistent with this opinion.
Costs of the appeal are assessed to the defendant.
REVERSED AND REMANDED.

. This situation is referred to as a "triangular deviation.” See JOHNSON, § 174 at 406, quoting Larson; See also H. Barret, The Factor of Route in the Doctrine of Re-Entry in Louisiana, 14 Tul.L.Rev. 72 (1939), which discusses the elements to consider when determining re-entry to employment by an employee at the commencement of the journey back to work.

. The facts of this case are distinguishable from Timmons v. Silman, 99-3264, pp. 4-6 (La.5/16/2000), 761 So.2d 507, 510-511. In a 4-3 decision involving vicarious liability, the Louisiana Supreme Court ruled that an employee who had gone to the post office to refill a postage meter for her employer was not within the course and scope of her employment when she was involved in an automobile accident on her way to a bank to cash her Christmas bonus check. Ms. Silman was headed away from her employer’s business having passed the business location and traveled some 18 blocks beyond in order to accomplish a personal mission. The court stated she was "going away from the business route and toward the personal objective.” Timmons, 99-3264 at 6, 761 So.2d at 511. This case- is clearly distinguishable on the facts.